IN THE SUPREME COURT OF THE STATE OF KANSAS

Nos. 106,586
106,587

STATE OF KANSAS,
*Appellee,*

v.

JEROLD MICHAEL DUNN,
*Appellant.*

SYLLABUS BY THE COURT

1.

Kansas charging documents do not bestow or confer subject matter jurisdiction on state courts to adjudicate criminal cases; the Kansas Constitution does. The holding to the contrary in *State v. Minor*, 197 Kan. 296, 416 P.2d 724 (1966), and in subsequent cases is overruled.

2.

Kansas charging documents need only show that a case has been filed in the correct court, *e.g.*, the district court rather than municipal court; show that the court has territorial jurisdiction over the crime alleged; and allege facts that, if proved beyond a reasonable doubt, would constitute a Kansas crime committed by the defendant.

3.

The Fifth and Fourteenth Amendments and the Sixth Amendment to the United States Constitution and Section 10 of the Bill of Rights of the Kansas Constitution govern claims that a Kansas charging document was so deficient that a criminal defendant's rights to due process and notice were impaired.

4.

On appeal, a criminal defendant's challenge to a charging document is to be treated no differently than other defense allegations of error. Holdings to the contrary in *State v. Hall*, 246 Kan. 728, 793 P.2d 737 (1990), and in subsequent cases are overruled.

5.

Challenges to the sufficiency of Kansas charging documents are subject to evaluation for timeliness under K.S.A. 22-3208(3) and, like any alleged error, should be preserved in the district court for appeal. If unpreserved, a defendant will be tasked with demonstrating on appeal that an exception to the usual preservation rule should be applied.

6.

The standard of review governing challenges to charging documents in Kansas criminal cases is de novo.

7.

On the record in this case, although Count 8 of the charging document was statutorily insufficient, the error was harmless under K.S.A. 2015 Supp. 60-261 and 60-2105.

8.

On the record in this case, the defendant's claim that Count 8 of the charging document failed to ensure protection of his constitutional rights to due process and notice does not compel reversal of his conviction.

2

9.

On the record in this case, the State's evidence in support of the defendant's conviction for stalking was sufficient as a matter of law.

Review of the judgment of the Court of Appeals in an unpublished opinion filed August 10, 2012. Appeal from Labette District Court; ROBERT J. FLEMING, judge. Opinion filed July 15, 2016. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Stephen P. Jones*, deputy county attorney, argued the cause, and *Hillary McKinney*, county attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

BEIER, J.: Defendant Jerold Michael Dunn appeals his convictions on one count of forgery and one count of stalking. For the first time on appeal, he urges us to abandon the analytical structure erected by *State v. Hall*, 246 Kan. 728, 760-61, 764-65, 793 P.2d 737 (1990), *overruled in part on other grounds by Ferguson v. State*, 276 Kan. 428, 78 P.3d 40 (2003), and argues that the charging document's failure to allege all of the elements of the crime of forgery deprived the court of subject matter jurisdiction. Dunn also challenges the sufficiency of the evidence on his stalking conviction.

On the way to resolution of these issues, we revisit and realign the Kansas approach to charging document sufficiency. We conclude that charging documents do not bestow or confer subject matter jurisdiction on state courts, and thus they need not allege every element of a crime in order to invoke a district court's subject matter jurisdiction or sustain an appellate court's jurisdiction. However, omission of certain information from a

charging document may give a criminal defendant a successful claim for relief that will take various forms at various stages of a prosecution before the district court and on appeal.

Ultimately, under the revised pattern of analysis we describe today, we affirm both of Dunn's convictions.

INTRODUCTION

Each criminal defendant is entitled to a fair trial. But there are few, if any, perfect trials. This is inevitable because trials are human endeavors.

The essential task of an appellate court when reviewing criminal cases is discerning which proceedings are so imperfect that they are unfair. Certainly, there are singular, critical aspects of a prosecution that cannot be done wrong or done without. Error affecting other aspects can be disregarded as long as the appellate court possesses a specified level of confidence that the error made no difference.

This court has been vexed for many years by difficulties in distinguishing one from the other when it comes to error in charging documents in criminal cases. Are such errors potentially fatal to subject matter jurisdiction? If so, how do we tell when they are so imperfect that jurisdiction is implicated? Even if charging documents are not jurisdictional instruments, how do we tell when they are so imperfect that they have failed to fulfill their function of informing the defendant about the crime alleged so that he or she can challenge the State's case?

We have state constitutional provisions that shed some light on this subject. We have statutes designed to tell us what must be in a complaint, information, or indictment—the three charging documents conventionally employed in Kansas. And we have dozens and dozens of cases that have wrestled with the nature and content of charging documents, cases nearly as old as the state and as fresh as today's blog post. These cases are listable and describable, but not all are amenable to seamless or even sensible synthesis, the lawyer's stock in trade.

One case, in particular, has been the bane of the criminal defense lawyers' existence for more than 25 years: *State v. Hall*, 246 Kan. 728, 793 P.2d 737 (1990). Today defendant Dunn urges us to reject *Hall*, at least to the degree that it made it more difficult for defendants to mount a successful jurisdictional challenge based on charging document error raised for the first time on appeal. Dunn argues that this part of *Hall* has never made sense. Subject matter jurisdiction exists or it does not, and all parties and the court are independently charged with ensuring that it does exist before disposing of any other issue in a case. Dunn insists that the timing of raising the question matters not one whit.

After comprehensive study, we have determined that it has been too easy to point out this flaw in *Hall* and apparently almost impossible for this court and those who come before it to appreciate its other, substantial virtues. Today we review what led this court to *Hall* and to a recent partial retreat from it, examining historic Kansas constitutional, statutory, and caselaw developments. We attempt to preserve what was good in *Hall* and say goodbye to its logical and legal infirmities.

FACTUAL BACKGROUND

During a break in their on-again-off-again relationship, defendant Dunn and Tracy Shaw, who had obtained a protection order against Dunn, encountered one another at a bank in Parsons. Shaw visited the bank daily as part of her job as a courier. According to bank employees, Dunn had been wandering around outside the bank before Shaw's arrival, and he eventually entered the bank, inquired about opening a checking account, and then appeared to leave. Shaw arrived some time later. While she was inside, Dunn reappeared and approached the bank's glass front doors. When Dunn waved at Shaw, a bank employee heard Shaw say, "That's harassment," and Shaw appeared to be "nervous and afraid, scared, upset." The employee offered Shaw the use of a telephone to call police, but Shaw declined.

Once it appeared that Dunn had again departed, Shaw left the bank to go to her car. As she was walking toward it, Dunn reappeared and positioned himself between Shaw and her car door. From inside the bank, the employee saw Dunn get "right into [Shaw's] face, and . . . point[] his finger." The employee said that Dunn "looked real mad" at Shaw.

Shaw would eventually testify that she was afraid and felt unsafe during this encounter with Dunn at the bank. Shaw also testified on direct examination about statements Dunn made to her at the time of the confrontation near her car; but she said she could not remember those statements during cross-examination. As a result of Shaw's memory lapse, the district judge struck her earlier direct examination testimony about Dunn's statements.

A month after the bank encounter, Dunn and Shaw reunited, and Shaw sought to have the protection order lifted.

A few weeks later, Dunn went to a smoke shop to buy cigarettes. Dunn presented the cashier with a prewritten check drawn on Shaw's bank account. The cashier told Dunn that the signature on the check was in the wrong place; it appeared on the check's memo line rather than on its signature line. Dunn then signed "Tracy Alford," the other name by which Shaw is known, on the check's signature line. According to Shaw, she never authorized Dunn to use her check for this smoke shop transaction.

PROCEDURAL BACKGROUND

The State charged Dunn with various offenses in four separate cases. In Case 09 CR 333, the multiple charges were for forgery and theft. Count 8 in the eventual Amended Complaint/Information stated:

"That on or about the 27th day of July, 2009, in Labette County, Kansas, Jerold M. Dunn, then and there being present did unlawfully, feloniously and knowingly issue[] or deliver[] a check (#1050) which he/she knew had been made, altered or endorsed so that it appeared to have been made, in violation of K.S.A. 21-3710 and against the peace and dignity of the State of Kansas. (Forgery-Passing) Severity level 8 Non-person Felony, (7-23 months)."

In Case 09 CR 210, the State charged Dunn with one count of stalking, based on his behavior at and outside the bank.

All four cases were consolidated and tried to the bench. Dunn was convicted on Count 8 of forgery in Case 09 CR 333, on the stalking count in Case 09 CR 210, and on two counts of violation of the protection order that were part of Case Nos. 09 CR 203 and 09 CR 398. The protection order counts are not at issue in this appeal.

7

Dunn appealed only his forgery and stalking convictions to the Court of Appeals. On the forgery conviction, he argued for the first time on appeal that Count 8 lacked multiple elements required by the statute defining the crime, K.S.A. 21-3710. He argued that the count "lack[ed] any language alleging the essential element of an 'intent to defraud.'" He also argued that the count failed to specify any of the listed statutory means of committing the act of forgery and failed to allege that Dunn lacked authority to use the check as he had. These charging document defects prejudiced the preparation of Dunn's defense "because he could not reasonably be expected to defend himself against charges of a noncrime," impaired his ability to plead any conviction in a subsequent prosecution "because there was no way to know what act of his could reasonably have been considered criminal under the statute," and limited his substantial rights to a fair trial "because he was never fully informed as to what charge he should be defending himself against." In short, Dunn asserted, the complaint did not "'by any reasonable construction, charge an offense for which the defendant [was] convicted.'"

The State characterized each of the defendant's challenges to Count 8 as "technical" and asserted that any omissions could not undermine a post-*Hall* presumption of the charging document's validity. It urged the Court of Appeals to rule that the count was not "'so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted,'" because Dunn and his series of three different defense lawyers were able to mount a "credible" defense to the forgery count, including cross-examination of the smoke shop personnel who accepted the check and Dunn's own direct testimony about Shaw's authorization of his use of the check.

A panel of our Court of Appeals affirmed both of Dunn's convictions. See *State v. Dunn*, Nos. 106,586 and 106,587, 2012 WL 3290004 (Kan. App. 2012) (unpublished opinion). On the forgery conviction, the panel stated that the question was whether the charging document was sufficient to confer subject matter jurisdiction, and it therefore

8

applied an unlimited standard of review. Observing that Count 8's omission of an allegation of intent to defraud was undisputed by the State, the panel filled in the blanks by means of Count 4 of the Amended Complaint/Information, a count on which Dunn had not been bound over after preliminary hearing. Count 4 alleged that Dunn unlawfully, feloniously, and knowingly made, altered, or endorsed the same check that was at issue in Count 8 with intent to defraud. 2012 WL 3290004, at *3. The panel also concluded that Dunn's attempt to prove that Shaw authorized his use of the check demonstrated that he was not prejudiced in his defense of Count 8 nor impaired in his ability to plead, and that he was not prevented from realizing his right to a fair trial.

This court granted Dunn's petition for review. In that petition, Dunn did not argue that the Court of Appeals panel incorrectly applied the post-*Hall* analysis of his defective complaint challenge raised for the first time on appeal. Rather, he quoted language from our decision in *State v. Portillo*, 294 Kan. 242, 274 P.3d 640 (2012). In that decision, the court expressed skepticism about the soundness of the *Hall* differentiation between defective complaint claims raised initially in the district court and those raised for the first time in the appellate court:

> "It gives one pause to look closely at how the *Hall* rule works. During the jury
> trial, the charging document would be jurisdictionally and fatally defective if it omitted
> an essential element and the trial court would not have jurisdiction to enter any resulting
> conviction. However, if the defendant later failed to file a motion for arrest of judgment,
> the charging document and resulting conviction would somehow acquire retroactive
> validity. That notion appears to run counter to the rule that subject matter jurisdiction
> cannot be created by waiver, estoppel, or consent. See [*State v.*] *Ellmaker*, 289 Kan.
> [1132,] 1151, [221 P.3d 1105 (2009), *cert. denied* 560 U.S. 966(2010)]. Likewise, the
> constraint on raising the jurisdictional issue for the first time on appeal is inconsistent
> with our holdings that allow a challenge to the district court's subject matter jurisdiction
> to be raised at any time. See *State v. Sales*, 290 Kan. 130, 135, 224 P.3d 546 (2010).
> Moreover, we recently declared that appellate courts have 'no authority to create

equitable exceptions to jurisdictional requirements.' *Board of Sedgwick County Comm'rs v. City of Park City*, 293 Kan. 107, Syl. ¶ 3, 260 P.3d 387 (2011)." *Portillo*, 294 Kan. at 255.

Dunn argued that the pre-*Hall* standard for evaluating defective complaints should be applied here and that its application would result in a ruling that the court lacked jurisdiction over Count 8.

After initial oral argument, we requested additional briefs and argument on the following topics:

1.    The history of and modern support or lack of support for the Kansas rule that the charging document in a criminal case either succeeds in conferring or fails to confer subject matter jurisdiction on the court.

2.    The standard that has been applied and that should be applied to determine whether a charging document in a Kansas criminal case is sufficient, deficient, or fatally deficient—including whether the charging document must contain all material elements of the crime in order to avoid deficiency or fatal deficiency.

3.    The historical, current, and appropriate future role of Kansas statutory law and of state and federal constitutional law, including Fifth Amendment due process and Sixth Amendment notice principles, in determining whether a charging document in a Kansas criminal case is sufficient, deficient, or fatally deficient.

4.    The controlling facts, holding, reasoning, and precedential value of the United States Supreme Court's opinion in *United States v. Cotton*, 535 U.S. 625, 629, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002), and cases dealing with the validity of

10

charging documents that have been decided since *Cotton* in lower federal courts and in other state appellate courts.

5. The correct remedy for a deficient or fatally deficient charging document, when the flaw is identified by a criminal defendant for the first time pretrial, during trial, after trial, on direct appeal, or in a collateral attack on the defendant's conviction or sentence.

6. The advisability of applying a more strict or less strict district court preservation requirement or standard of review to an appellate challenge to the sufficiency of a Kansas charging document, see *Hall*, 246 Kan. 728, depending upon the timing of a criminal defendant's first assertion of such a claim or the procedural vehicle chosen to advance it.

In response to this court's order, Dunn argued that a sufficient charging document is required to endow a district court with subject matter jurisdiction over a criminal case as well as to adequately charge a crime. Dunn asserted that a charging document's lack of an allegation on any element of the crime makes it not only deficient but also fatally so. Although a Fifth Amendment due process claim or a Sixth Amendment notice claim can be waived and may be subjected to a harmless error review on appeal, a subject matter jurisdiction problem can never be waived and must always be considered by the court. This is true, Dunn argued, even if the question arises on an appellate court's own initiative, and the applicable standard of review should not vary from one case to the next, depending on when or through which procedural mechanism the issue has surfaced.

With regard to *Cotton*, 535 U.S. 625, Dunn recognized the United States Supreme Court's holding that, under federal law, defects in a charging document no longer necessarily deprive a court of subject matter jurisdiction to adjudicate a case. Further, the

11

Court subjected a charging document error raised for the first time on appeal to the "plain error" test of Federal Rule of Criminal Procedure 52(b). 53 U.S. at 631. Dunn also acknowledged that federal courts following *Cotton* include the Tenth and Eleventh Circuits. See *United States v. Avery*, 295 F.3d 1158, 1173 (10th Cir. 2002); *United States v. Brown*, 752 F.3d 1344, 1350-51 (11th Cir. 2014). And courts in several of our sister states have decided likewise. See, *e.g.*, *State v. Ortiz*, 162 N.H. 585, 589-90, 35 A.3d 599 (2011). Nevertheless, Dunn argued, neither this court nor any state court is bound to do so. See *State v. Apollonio*, 130 Hawai'i 353, 357-59, 311 P.3d 676 (2013) (applying Hawai'i caselaw); *State v. Johnson*, 219 W. Va. 697, 700-02, 639 S.E.2d 789 (2006) (applying West Virginia law). Dunn also observed that, despite *Cotton* and the cases that have followed it, certain flaws in federal charging documents are still regarded as serious enough to deprive the court of subject matter jurisdiction. See *United States v. Peter*, 310 F.3d 709, 713-16 (11th Cir. 2002) (indictment that fails to charge federal crime insufficient to support subject matter jurisdiction despite defendant's guilty plea).

On this case specifically, Dunn argued that K.S.A. 22-3201(b) permitted the State to incorporate allegations from another count or counts in its charging document into Count 8, the count on which Dunn was convicted, but the State did not seek to do so here. Thus, in Dunn's view, the Court of Appeals panel erred when it looked to Count 4, a count on which Dunn had not even been bound over, to fill in fatal omissions in Count 8.

On the question of remedy, Dunn urged this court to overrule *Hall* as an aberration that erroneously excused subject matter jurisdictional defects in charging documents. Although he acknowledged that the appropriate procedural vehicle for seeking relief on a claim that a charging document was fatally defective may vary from one stage of a prosecution to another, he argued that all such vehicles are directed at preventing or vacating a void judgment. If the claim has merit, such prevention or vacation is inevitably necessary.

12

The State's response to this court's order agreed with Dunn that a sufficient charging document is necessary to give the court subject matter jurisdiction over a prosecution. It equated adequate notice to a defendant of the State's allegations of each of a charged crime's elements to "sufficiency" for subject matter jurisdiction purposes. In essence, once a defendant is made aware of the allegations that need to be defended, the State argued, it has met any obligation it bore to create or invoke the subject matter jurisdiction of the court. The State divided our previous cases on charging document sufficiency into three groups: (1) those in which a missing element was not essential and the defendant was not misled or disadvantaged by an omission; (2) those in which a missing element was supplied through incorporation of other information in the charging document, which meant the charging document was deficient but not fatally so; and (3) those, as in *Portillo*, 294 Kan. at 257, and *State v. Minor*, 197 Kan. 296, 299, 416 P.2d 724 (1966), in which a missing element was so important that the defendant had been convicted of a crime not charged or had been sentenced for a crime he or she could not be expected to defend against, which meant that the charging documents qualified as fatally deficient and that subject matter jurisdiction was lacking.

On *Cotton*, the State's response described the facts and holding of the case without additional discussion of its applicability to this case or of any subsequent cases following it.

The State supported continuation of *Hall*'s differentiation between the standard of review applicable when a defective complaint claim is made for the first time in the district court and that applicable when it is made for the first time on appeal. The State argued that *Hall* struck a reasonable and appropriate balance between the rights of the accused and the justice and efficiency required by K.S.A. 22-2103, which states that Kansas' criminal procedure statutes are "intended to provide for the just determination of

every criminal proceeding" and are to be construed "to secure simplicity in procedure, fairness in administration[,] and the elimination of unjustifiable expense and delay." In the State's view, once a defendant has demonstrated that he or she is informed enough by a charging document to mount a defense, judicial review of the document's language should be forgiving.

Dunn filed a reply to the State, in which he noted:

"It appears generally from the State's supplemental brief that the State has failed to recognize that the ability of a charging document to confer subject matter jurisdiction is a different matter than the ability of the charging document to adequately inform the accused of the nature and cause of the action against him. While a charging document that does not allege all of the essential elements of the crime might be sufficient to adequately inform the accused of the nature and cause of the action against him— particularly if the accused does not complain about the constitutional sufficiency of the charging document at the time of trial—that same charging document would be fatally defective because it failed to confer jurisdiction on the trial court to enter a judgment of conviction upon a finding of guilt."

Having reviewed the parties' arguments, we turn to our analysis.

SUBJECT MATTER JURISDICTION OVER THE COMPLAINT'S FORGERY COUNT

Dunn's initial, and dominant, appellate issue challenges the sufficiency of Count 8 of the complaint to endow the district court with subject matter jurisdiction over his prosecution for forgery. He relies on Kansas caselaw repeatedly declaring that a Kansas charging document is a jurisdictional instrument and beseeches us to overrule *Hall*, 246 Kan. 728, which introduced a kinder, gentler-to-the-State appellate review of subject matter jurisdiction challenges to charging documents raised for the first time on appeal.

14

The question of whether subject matter jurisdiction exists is one of law subject to unlimited review on appeal. *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, Syl. ¶ 2, 204 P.3d 562 (2009).

"Subject matter jurisdiction is the power of the court to hear and decide a particular type of action." *State v. Matzke*, 236 Kan. 833, 835, 696 P.2d 396 (1985); see *Cotton*, 535 U.S. at 630 (subject matter jurisdiction refers to "'the courts' statutory or constitutional power to adjudicate the case'"). The existence of subject matter jurisdiction cannot be waived, and its nonexistence may be challenged at any time. See, *e.g.*, *Trotter v. State*, 288 Kan. 112, Syl. ¶ 4, 200 P.3d 1236 (2009). A conviction obtained in a court without subject matter jurisdiction is void. See *State v. Elliott*, 281 Kan. 583, Syl. ¶ 3, 133 P.3d 1253 (2006).

All of the six topics on which we sought additional briefing and argument from the parties were related to this issue. We address them in the order listed with the exception of the fourth on *Cotton* and its progeny. We address *Cotton* first because of its relevance to our identification of the law controlling various aspects of this decision.

United States v. Cotton

In *Cotton*, the United States Supreme Court considered a challenge to an indictment that failed to allege the quantity of cocaine and cocaine base that defendants had allegedly conspired to distribute and possess with intent to distribute. 535 U.S. at 627-28. Under the applicable federal law, a conviction for a drug offense involving a detectable quantity of cocaine or cocaine base carried a maximum imprisonment term of 20 years. For convictions involving 50 grams or more of cocaine base, the maximum sentence increased to life imprisonment. After the jury convicted defendants, the federal

15

district court judge found, based on trial testimony, that defendants were responsible for at least 500 grams of cocaine base and imposed enhanced sentences. The defendants did not object in district court to the fact that their sentences were based on a quantity not alleged in the indictment.

On appeal, the defendants argued that their sentences were invalid under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), because the issue of drug quantity was neither alleged in the indictment nor submitted to the jury. The Court of Appeals for the Fourth Circuit reviewed for plain error based on the defendants' failure to object before the district court. Ultimately, the Court of Appeals vacated defendants' sentences "on the ground that 'because an indictment setting forth all the essential elements of an offense is both mandatory and jurisdictional, . . . a court is without jurisdiction to . . . impose a sentence for an offense not charged in the indictment.'" *Cotton*, 535 U.S. at 629. The Court of Appeals relied on *Ex parte Bain*, 121 U.S. 1, 7 S. Ct. 781, 30 L. Ed. 849 (1887), which had concluded that, because of a defective indictment, "'the jurisdiction of the offence [was] gone, and the court [had] no right to proceed any further in the progress of the case for want of an indictment.'" *Cotton*, 535 U.S. at 629 (quoting *Bain*, 121 U.S. at 13).

The Supreme Court rejected "the Court of Appeals' conclusion that the omission from the indictment was a 'jurisdictional' defect." 535 U.S. at 629. Chief Justice Rehnquist wrote that post-*Bain* cases soon departed from *Bain*'s idea that defects in an indictment deprived a court of jurisdiction. See *Lamar v. United States*, 240 U.S. 60, 36 S. Ct. 255, 60 L. Ed. 526 (1916) (failure of indictment to charge a crime not jurisdictional defect, "goes only to the merits of the case"). He explained that the "'expansive notion'" of jurisdiction typical of the *Bain*-era cases was a "product of an era in which the Court's authority to review criminal convictions was greatly circumscribed." 535 U.S. at 629 (early authority to afford habeas relief limited to criminal cases in which convicting court

16

lacked jurisdiction). The modern understanding of jurisdiction instead referred to "'the courts' statutory or constitutional *power* to adjudicate the case.'" 535 U.S. at 630 (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 89, 118 S. Ct. 1003, 140 L. Ed 2d 210 [1998]). The Court then applied the federal plain error test to the defendants' forfeited claim. Because the evidence that the conspiracy involved at least 50 grams of cocaine base was "'overwhelming' and 'essentially uncontroverted,'" the Court held that defendants' rights were not substantially affected, reversing the Court of Appeals. 535 U.S. at 633-34.

Since *Cotton*, as Dunn has recognized, both the Tenth and Eleventh Circuits have applied its general rule that the absence of an element of the crime in a charging document does not doom subject matter jurisdiction. But the Eleventh Circuit has nevertheless identified one situation in which an indictment that failed to charge a federal crime was fatal to a prosecution.

In the Tenth Circuit's *Avery*, 295 F.3d at 1164, defendant Jonathan Avery was indicted by a federal grand jury on eight counts, which included charges that Avery possessed cocaine base with an intent to distribute and knowingly possessed specific firearms in relation to a drug trafficking crime. Avery argued on appeal that his convictions tied to possession of a firearm in furtherance of a drug trafficking crime must be reversed because of deficiencies in the indictment, including deficiencies that deprived the trial court of jurisdiction. 295 F.3d at 1164. The panel rejected Avery's argument, relying on *United States v. Prentiss*, 256 F.3d 971, 981 (10th Cir. 2001) (en banc), in which the court had stated: "'An indictment's failure to allege an element of a crime is not jurisdictional in the sense that it affects a court's subject matter jurisdiction, *i.e.*, a court's constitutional or statutory power to adjudicate a case.'" *Avery*, 295 F.3d at 1173. The panel then noted that the United States Supreme Court had endorsed this position in

17

*Cotton*. In the panel's view, *Prentiss* and *Cotton* "foreclosed squarely" Avery's challenge. *Avery*, 295 F.3d at 1173.

In the Eleventh Circuit, the panel in *Brown*, 752 F.3d at 1345, applied the holding of *Cotton* to reject defendant Danielle Brown's argument that her indictment was defective because it did not expressly allege the mens rea element of the charged offense. Brown had pleaded guilty to "knowingly receiving 481 counterfeit United States Postal Money Orders from a foreign country with the intent to pass and publish these same counterfeit money orders as true." 752 F.3d at 1345. The panel discussed a series of pre-*Cotton* Eleventh Circuit cases holding that omission of an element of a crime from an indictment did not deprive a court of jurisdiction. *Brown*, 752 F.3d at 1349-50. The panel then noted that the United States Supreme Court had confirmed the Eleventh Circuit's position when it addressed the questions presented in those cases in *Cotton. Brown*, 752 F.3d at 1350. The panel acknowledged the distinction between an indictment that fails to allege an element of a crime and one that fails to constitute a crime. "[T]here is no jurisdictional defect when the 'indictment fail[s] to allege an element of the charged offense,' but there is one when the indictment affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside the sweep of the charging statute." 752 F.3d at 1352 (quoting *Peter*, 310 F.3d at 714).

As pointed out by Dunn, the earlier *Peter* panel of the Eleventh Circuit had persisted in regarding a defective complaint as a subject matter jurisdiction rather than a statutory problem. *Peter* arose on *coram nobis* because defendant Michael J. Peter did not challenge the sufficiency of the charging document to support the court's jurisdiction until after he had entered a guilty plea and served his sentence. The alleged flaw was that the conduct charged and admitted to was not proscribed by the federal statute invoked, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*. The panel distinguished the recently decided *Cotton*:

18

"Unlike the error asserted here, there was no claim in *Cotton* that the indictment consisted only of specific conduct that, as a matter of law, was outside the sweep of the charging statute. Rather, the conviction reviewed in *Cotton* had been obtained on an indictment that unquestionably described the offense of conspiring to distribute and to possess with intent to distribute cocaine. The indictment omission went only to the legality of the defendants' sentences. Furthermore, the prosecution's evidence had been 'overwhelming and essentially uncontroverted' on the very point of fact which the indictment had erroneously failed to allege. [Citation omitted.] Hence the Supreme Court did not address whether the insufficiency of an indictment assumes a jurisdictional dimension when the only facts it alleges, and on which a subsequent guilty plea is based, describe conduct that is not proscribed by the charging statute." *Peter*, 310 F.3d at 714.

Ultimately, the panel decided "it is clear under these circumstances that the Government's proof of the alleged conduct, no matter how overwhelming, would have brought it no closer to showing the crime charged than would have no proof at all," and "Peter's innocence of the charged offense appears from the very allegations made in the superseding information, not from the omission of an allegation requisite to liability." 310 F.3d at 715. Based on this, the district court, although broadly endowed with original and exclusive jurisdiction over all offenses against the laws of the United States, was without jurisdiction to accept Peter's plea. *Peter*, 310 F.3d at 715.

These federal cases are instructive in this case on at least three points.

First, they demonstrate that any Kansas rule that a charging document including every element of a crime is essential to the existence of subject matter jurisdiction has no current basis in federal law. Since *Cotton* overruled *Bain*, if the rule exists at all, it must be supported by state law—in our case, the Kansas Constitution, Kansas statute, or Kansas common law. Both Hawai'i and West Virginia courts have grasped and agreed on

19

this source-of-law lesson from *Cotton*. See *Apollonio*, 130 Hawai'i at 355-59 (applying Hawai'i law); *Johnson*, 219 W. Va. at 700 (applying West Virginia law).

Second, *Cotton*'s evaluation of whether there was federal plain error requiring reversal reminds us that, to the extent a defective complaint issue before our court is dependent on an alleged impairment of constitutional due process or notice under the federal Bill of Rights, federal law informs the standard of review for error and for harmlessness. These inquiries are distinct from state law inquiries about charging document error and its effect or lack of effect on the district or appellate court's subject matter jurisdiction. Conflation of these analyses and their governing law is to be avoided.

And third, based on *Peter*, we recognized that there may be cases in which the conduct alleged in a charging document, even if a defendant has admitted to engaging in it, does not constitute a violation of the criminal statute invoked.

*Historical Support for* Hall*'s Jurisdictional Instrument Rule*

The first issue on which we sought the parties' additional input was "[t]he history of and modern support or lack of support for the Kansas rule that the charging document in a criminal case either succeeds in conferring or fails to confer subject matter jurisdiction on the court." The responses we received were something less than robust. In essence, Dunn asserted that the rule exists and the State capitulated. Our research has revealed that the stability of the Kansas jurisdictional instrument rule, though often recited, is highly questionable.

The rule originated in 1966 with a pronouncement in *Minor*, 197 Kan. 296, although *Hall* would neither cite *Minor* nor acknowledge its paternity. We discuss *Minor* itself more fully below, but, before doing so, turn to an examination of state

20

constitutional law, statutory law, and caselaw leading up to its pivotal link between charging documents and subject matter jurisdiction.

To begin with, at the time *Minor* was decided, Article 3, Section 1, of the Kansas Constitution had vested "judicial power of this state" in the "supreme court, district court, probate courts, justices of the peace, and such other courts, inferior to the supreme court, as may be provided by law." Since 1972, the passage has located the judicial power of the state "exclusively in one court of justice," divided into the Supreme Court, "district courts, and such other courts as are provided by law." Another section, now found at Article 3, Section 6(b), has always provided that the "district courts shall have such jurisdiction in their respective districts as may be provided by law."

As our predecessors recognized in *Hall*, several statutes also have governed. They continue, when given appropriate attention, to reinforce the constitution's language and clarify the true source of district court subject matter jurisdiction over criminal cases. K.S.A. 20-301 or a predecessor provision has provided since 1868 that there "shall be in each county" a district court that "shall have general original jurisdiction" on all matters, "both civil and criminal," unless otherwise provided by law. See G.S. 1868, ch. 28, art. 1, sec. 1. In addition, since 1868, Kansas statutes have provided that "[t]he district courts shall have exclusive original jurisdiction" in all felony cases. See G.S. 1868, ch. 31, art. 10, sec. 308. K.S.A. 22-2601 now provides that, except as provided in K.S.A. 12-4104 dealing with the jurisdiction of municipal courts, "the district court shall have exclusive jurisdiction to try all cases of felony and other criminal cases arising under the statutes of the state of Kansas." See also *Chelf v. State*, 46 Kan. App. 2d 522, 529, 263 P.3d 852 (2011) (subject matter jurisdiction vested by statute, constitution) (citing *Kingsley*, 288 Kan. at 395).

Meanwhile, Kansas statutes have historically provided and still provide for several different mechanisms to commence or institute a criminal prosecution. See G.S. 1868, ch. 82, art. 5, sec. 36 (complaint); G.S. 1868, ch. 82, art. 6, sec. 66 (indictment, information). Since 1976, K.S.A. 22-3201(a) has provided that generally prosecutions in district court "shall be upon complaint, indictment or information." See also K.S.A. 22-2301(1) ("[u]nless otherwise provided by law, a prosecution shall be commenced by filing a complaint with a magistrate"). K.S.A. 22-2202 defines a complaint as a "written statement under oath of the essential *facts* constituting a crime." (Emphasis added.) K.S.A. 22-3011 has set out the process leading to indictment, and K.S.A. 22-2303(1) has set out the process for initiating prosecution by filing an information. In addition to the usual mechanisms of complaint, indictment, or information, "in extreme cases, upon affidavits filed . . . of a commission of a crime," K.S.A. 22-2301(2) has permitted a district judge to order a county attorney to institute criminal proceedings.

Since 1970, K.S.A. 22-3201 has set forth the required contents for charging documents and has noted ways in which the charging document may be amended by the court or the State or be augmented after a defense motion for a bill of particulars:

> "(b) The complaint, information or indictment shall be a plain and concise written statement of the essential *facts* constituting the crime charged, which complaint information or indictment, drawn in the language of the statute, shall be deemed sufficient. The precise time of the commission of an offense need not be stated in the indictment or information; but it is sufficient if shown to have been within the statute of limitations, except where the time is an indispensable ingredient in the offense. An indictment shall be signed by the presiding juror of the grand jury. An information shall be signed by the county attorney, the attorney general or any legally appointed assistant or deputy of either. A complaint shall be signed by some person with knowledge of the *facts*. Allegations made in one count may be incorporated by reference in another count. The complaint, information or indictment shall state for each count the official or customary citation of the statute, rule and regulation or other provision of law which the

22

defendant is alleged to have violated. Error in the citation or its omission shall [not be] ground for dismissal of the complaint, information or indictment or for reversal of a conviction if the error or omission did not prejudice the defendant.

"(c) When relevant, the complaint, information or indictment shall also allege *facts* sufficient to constitute a crime or specific crime subcategory in the crime seriousness scale.

"(d) The court may strike surplusage from the complaint, information or indictment.

"(e) The court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced.

"(f) When a complaint, information or indictment charges a crime but fails to specify the particulars of the crime sufficiently to enable the defendant to prepare a defense the court may, on written motion of the defendant, require the prosecuting attorney to furnish the defendant with a bill of particulars. At the trial the state's evidence shall be confined to the particulars of the bill." (Emphasis added.)

This statute's focus on inclusion of facts constituting a crime in Kansas is reminiscent of its earliest antecedent. Chapter 82, Article 8, Section 103 of the General Statutes of Kansas 1868, effective 1868, provided that an indictment or information "must contain: . . . [a] statement of the *facts* constituting the offense, in plain and concise language, without repetition." (Emphasis added.) Section 104 of the same Article stated that the indictment or information must be "direct and certain, as it regards the party and the offense charged." Section 109 stated that the indictment would be sufficient if it included, among other things, a statement that "the offense was committed within the jurisdiction of the court, or is triable therein," which appears to be a reference to territorial rather than subject matter jurisdiction. These concepts endured through several changes in statutory numbering during the 102 years between 1868 and 1970. See G.S. 1949, 62-1004; G.S. 1949, 62-1005; G.S. 1949, 62-1010.

We also note that the possibility of different forms of cure under Subsections (d), (e), and (f) of K.S.A. 22-3201 indicate that a court is not automatically deprived of subject matter jurisdiction by a defect in a charging document. In addition, Subsection (b) allows a prosecution to be continued in spite of an error or omission in the required citation to the provision of law alleged to be violated, unless a defendant has suffered prejudice. This also indicates at a minimum that not all errors in complaints, indictments, or informations are fatal to subject matter jurisdiction.

Again, these possibilities of at least limited district court cure for a charging document that is in some manner deficient have deep roots in Kansas law. See G.S. 1868, ch. 82, art. 6, sec. 72 ("An information may be amended in matter of substance or form at any time before the defendant pleads, without leave. The information may be amended on the trial as to all matters of form, at the discretion of the court, when the same can be done without prejudice to the rights of the defendant."). In addition, Chapter 82, Article 8, Section 110 provided that no indictment or information could be quashed or set aside

> "for any of the following defects: *First*, For a mistake in the name of the court or county in the title thereof. *Second*, For the want of an allegation of the time or place of any material fact, when the venue and time have once been stated in the indictment or information. *Third*, That dates and numbers are represented by figures. *Fourth*, For an omission of any of the following allegations, viz: 'With force and arms,' 'Contrary to the form of the statute,' or, 'Against the peace and dignity of the state of Kansas.' *Fifth*, For an omission to allege that the grand jurors were impaneled, sworn or charged. *Sixth*, For any surplusage or repugnant allegation, when there is sufficient matter alleged to indicate the crime and person charged; nor *Seventh*, For any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

An indictment or information could be quashed under this early enactment when "it appear[ed] upon its face" that the facts stated did not "constitute a public offense." G.S. 1868, ch. 82, art. 11, sec. 225.

Since 1970, K.S.A. 22-3208 has discussed at least some of the ways in which a defendant should challenge an error in the commencement of a prosecution. It takes pains to provide that a challenge to a charging document for failure to show jurisdiction in the court or to charge a crime need not be raised prior to plea or trial.

"(3) Defenses and objections based on defects in the institution of the prosecution or in the complaint, information or indictment other than that it fails to show jurisdiction in the court or to charge a crime may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but he court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the complaint, information or indictment to charge a crime shall be noticed by the court at any time during the pendency of the proceeding.

"(4) . . . A plea of guilty or a consent to trial upon a complaint, information or indictment shall constitute a waiver of defenses and objections based upon the institution of the prosecution or defects in the complaint, information or indictment other than it fails to show jurisdiction in the court or to charge a crime."

A different subsection of the same statute further suggests that neither a defect in a complaint, indictment, or information nor another type of defect in the institution of a prosecution necessarily deprives the court of subject matter jurisdiction, because the defendant may be held in custody or on an appearance bond continued up to 1 day after relief is granted on a motion challenging the defect. See K.S.A. 22-3208(6).

25

Once a district court judgment has been entered and before a direct appeal, Kansas statutes also have provided since 1868 that a defendant may file a motion for arrest of judgment if the complaint, indictment, or information "does not charge a crime or if the court was without jurisdiction of the crime charged." K.S.A. 22-3502. At the time of Dunn's trial and now, the time limit for such a motion has been 14 days after verdict or finding of guilt or a plea of guilty or nolo contendere, unless the court extends the deadline. This availability of a last-ditch district court procedural mechanism for challenging the sufficiency of a charging document or the absence of jurisdiction, whose availability was limited to 10 days in 1990 when *Hall* as decided, eventually proved particularly important to this court.

Like the constitutional and statutory provisions with which we have become reacquainted above, caselaw predating *Minor* did not invariably support its characterization of charging documents as the instruments conferring or bestowing subject matter jurisdiction on the courts. And it did not make all errors in them fatal to that jurisdiction.

Under Kansas common law, certain components of a charging document and certain procedures concerning it have been required, but courts have aimed from the beginning to leave strict "technical certainty" behind. See *Wessels v. Territory*, McCahon 100, 1 Kan. (Dassler's ed.) 525, 1860 WL 3387 (1860) (citing Acts of 1859, Section 95 at 197) (good indictment names defendant, shows offense committed within territorial jurisdiction of court, sets forth offense in plain language; "the offense charged is stated with such a degree of certainty that the court may pronounce judgment upon conviction").

In the first few decades of statehood, for example, the court ruled that it was necessary for a charging document to originate with the proper authority. See *Jackson v.*

26

*State*, 4 Kan. 150 (1867). It also must demonstrate that the court possessed territorial jurisdiction. See *Territory v. Freeman*, McCahon 56, 1 Kan. (Dassler's ed.) 491, 1858 WL 4421 (1858); see also *State v. Hoffman*, 171 Kan. 116, 117, 119, 229 P.2d 768 (1951) (embezzlement defendant successfully moved to quash amended information; defendant had absconded to California, had there refused victim's demand for money's return; no allegation defendant gained possession of money in Reno County, Kansas). And it must allege facts that constituted a Kansas offense. See *State v. Pittman*, 10 Kan. 593, 597-98 (1873) (information charged defendant with selling liquor without license from county, failed to allege defendant lacked license from city; no crime charged); see also *State v. Pitzer*, 23 Kan. 250, 252 (1880) (indictment failed to allege lack of license for all permissible means of selling liquor; want of one means does not negate existence of others; grant of motion to quash affirmed for indictment's lack of "essential element"). But a mere technical error with no ill effect on the substantial rights of the defendant could be disregarded. See *State v. Carey*, 56 Kan. 84, 87-88, 42 P. 371 (1895) (failure to affix seal immaterial, not prejudicial).

*State v. Hinkle*, 27 Kan. 308 (1882), is illustrative of 19th-century analysis of charging documents. In that case, the court reversed the defendant's conviction because the complaint that launched the prosecution failed to show territorial jurisdiction; it did not allege that the crime occurred in Brown County. Before reaching that issue, however, the court addressed the defendant's argument that the proceeding was wholly invalid because the complaint had not been verified except through the filing of an amended version. The defendant essentially asserted a lack of subject matter jurisdiction: "[T]here was at the commencement of the trial in the district court no verified complaint on file, and . . . therefore there was no valid proceeding pending against defendant, nothing which could be amended, and . . . the court had no power to permit the filing of a new and verified complaint." 27 Kan. at 310. The court rejected this argument, holding: "There was a prosecution pending against the defendant, a complaint filed whether

27

defective or not; and if defective, the court had the power to permit the filing of a new and perfect complaint at any stage of the proceedings. (Comp. Laws 1879, ch. 83, § 22.)" 27 Kan. at 310.

Another early case, *State v. Brown*, 21 Kan. 38 (1878), demonstrated the necessity of stating facts that constitute a Kansas crime. In *Brown*, the court reversed defendant's first-degree murder conviction because the indictment failed to allege either explicitly or implicitly that the defendant killed the victim with premeditation. *Brown*, 21 Kan. at 49-51; see also *State v. Frazier*, 53 Kan. 87, 91-92, 36 P. 58 (1894) (reversing attempted rape conviction and remanding case for further proceedings because of information's failure to allege specific overt act; essential element of offense should be set forth in charge "so that the court may see whether or not the law has been violated, and so the accused may know to what he must make answer"). The court noted that the indictment may have been sufficient to charge second-degree murder, but not first-degree murder, and it reversed and remanded for retrial. *Brown*, 21 Kan. at 48, 50-52, 54. It is important to note that the court did not dismiss the case entirely because of an absence of subject matter jurisdiction, and it did not hold that the defendant stood convicted of the lesser offense of second-degree murder. It also did not discuss why either of these remedies was not appropriate. It simply allowed the parties to start over, each fully informed about exactly what was at stake.

In other cases involving alleged omissions from charging documents, the court rejected arguments that a prosecution was flawed from its initiation. In *State v. McGaffin*, 36 Kan. 315, 318-20, 13 P. 560 (1887), the information charging murder failed to include the words "malice aforethought" or "with intent to kill" but the court decided other language succeeded in conveying the same meaning. See also *State v. Hillis*, 145 Kan. 456, 458, 65 P.2d 251 (1937) (information's use of the words "unlawfully," "steal" connote criminal intent, follow language of statute; judgment in favor of defense

28

reversed, cause remanded with instructions to overrule motion to quash information); *State v. Goodrich*, 136 Kan. 277, 278-79, 15 P.2d 434 (1932) (no error in refusal to grant motion to quash information in worthless check prosecution; defendant's challenge on basis of missing elements of crime baseless); *State v. Morris*, 124 Kan. 505, 507-08, 260 P. 629 (1927) (omission of "intent to defraud" from charging document in forgery prosecution not fatal to defendant's conviction; missing element of offense mere "technical averment"); *State v. Moore*, 110 Kan. 732, 733, 205 P. 644 (1922) (motion to quash information charging attempted rape correctly overruled; information set out acts done by defendant in attempt charged); *State v. Johnson*, 92 Kan. 441, 443-46, 140 P. 839 (1914) (information contained every element of offense of first-degree murder, including deliberation inferred from other explicitly stated elements; *Brown* distinguished); *State v. Calhoun*, 75 Kan. 259, 262, 88 P. 1079 (1907) (every essential element of forgery by fraudulent passing of forged instrument included in charging document despite inclusion of language describing other statutorily defined method of committing forgery; conviction affirmed); *State v. Learned*, 73 Kan. 328, 333, 85 P. 293 (1906) (information charging incest sufficient even though it did not follow language of statute exactly; "It has been so frequently decided by this court that it is not requisite that the exact language of the statute be used, but that other language of like import may be employed, that the citation of the cases is unnecessary."); *State v. Jessup*, 42 Kan. 422, 424, 22 P. 627 (1889) (charge including reference to burning barn to defraud insurer adequate to convey essential element barn insured at time of fire).

We also note that other cases from as early as the *Brown-McGaffin* era held that differing appellate standards of review would be applied to charging document challenges, depending on the nature or timing of the objection raised. See *State v. Decker*, 52 Kan. 193, 194-95, 34 P. 780 (1893) (challenge to missing element of crime in charging document allowed when raised in motion for new trial, despite no motion to quash or motion to arrest judgment; conviction for removing building from mortgaged

property without permission of assignee reversed); *Jessup*, 42 Kan. at 423-24 (failure to file motion to quash, motion to arrest judgment could end case; motion for new trial construed as motion to arrest judgment to reach merits of information's sufficiency); *City of Kingman v. Berry*, 40 Kan. 625, 627, 20 P. 527 (1889) ("[d]efects in a criminal pleading which might be held bad in a motion to quash, if one was made, are not always sufficient, after a verdict of guilty, to arrest a judgment"; conviction on complaint failing to allege obstruction of street, sidewalk upheld; "unlawfully kept and maintained" barrels of oil adequate equivalent); *State v. Segermond*, 40 Kan. 107, 108, 112, 19 P. 370 (1888) (objection to information lodged after verdict "must be considered in a different light here than as if such objections had been properly made at the trial"; "if on examination it can be seen that the information was sufficiently explicit, first, to enable the court to say that, admitting the facts, it had jurisdiction; second, to apprise the defendant of the nature of the offense charged, so as to give him an opportunity to make his defense; and third, to make the judgment certain and available as a bar to any subsequent prosecution for the same offense" then no remedy due; allegation that defendant took "twenty-five dollars in money" not specific enough to provide sufficient notice under Kansas Constitution Bill of Rights; robbery conviction reversed); *State v. Henry*, 24 Kan. 457, 459 (1880) ("[T]he defendant, after taking his chances of an acquittal upon the merits of the action, cannot then object to the information, because it has not stated the offense in as definite terms as it might have done."). These cases indicated that a perfect charging document was not indispensable to the existence of subject matter jurisdiction.

The earliest Kansas appellate case we have found that explicitly separated the concept of subject matter jurisdiction from the concept of charging document sufficiency is the original Court of Appeals' decision in *State v. Hook*, 4 Kan. App. 451, 46 P. 44 (1896), *overruled on other grounds Learned*, 73 Kan. at 331. In *Hook*, the defendant was charged with adultery, and he challenged the information on several grounds, including lack of jurisdiction and a failure to state facts sufficient to constitute an offense. The court

30

made quick work of the jurisdictional challenge, stating without any further elaboration or citation that the district court had subject matter jurisdiction of the crime charged. 4 Kan. App. at 454. It also observed that the court had acquired personal jurisdiction over the defendant when he gave a recognizance for his appearance at the court term. 4 Kan. App. at 454-55. Still, the information was defective and fatally so, because it did not charge a public offense. 4 Kan. App. at 456-58. The relief granted by the court was reversal of the adultery conviction and remand to the district court "with directions to set the judgment of conviction aside and to sustain the motion to quash the information." 4 Kan. App. at 458.

Other early cases filling the decades leading to *Minor* in 1966 demonstrate that this court, over time, has attempted to explain the relationship between subject matter jurisdiction on the one hand and the language of the charging document on the other hand in an imprecise assortment of ways.

In *James v. Amrine*, 157 Kan. 397, 140 P.2d 362 (1943), the court considered the sufficiency of an information collaterally attacked in a habeas proceeding. The defendant claimed that the information erroneously alleged the date of the crime, placing it 6 months after his trial, which rendered his conviction and sentence void because the district court was divested of subject matter jurisdiction. This court took pains to say that the habeas action was not based upon a denial of due process. Instead, and in contrast to the language of an earlier opinion, *State v. Keester*, 134 Kan. 64, 4 P.2d 679 (1931), it described the issue before it as whether the information "was sufficient to *give* the court jurisdiction to enter upon inquiry and make a decision." (Emphasis added.) *James*, 157 Kan. at 399. The court held that the obvious clerical error "did not render the information void or vitiate the subsequent proceedings," noting that it would have been subject to correction by amendment had it been noticed earlier than 18 years after judgment was entered. 157 Kan. at 400.

Three years later, in *State v. Hazen*, 160 Kan. 733, 165 P.2d 234 (1946), this court focused on whether an information conformed to the statutory definition of the crime of assault. The defendant had challenged the information, including filing a motion to quash and a motion to arrest judgment in the district court and making an issue of it on direct appeal. This court noted that the common law absolutist requirement that an information "conform strictly to established formality and charge an offense with technical accuracy and nicety of language" had been superseded by more relaxed statutory standards, including that the information state "'*the facts* constituting the offense, in plain and concise language, without repetition.'" (Emphasis added.) 160 Kan. at 736-37 (quoting G.S. 1935, 62-1004). It also specifically quoted statutory language prohibiting quashing an information "'[f]or any surplusage or repugnant allegation, when there is sufficient matter alleged to indicate the crime and person charged'" or "'[f]or any other defects or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits.'" 160 Kan. at 737 (quoting G.S. 1935, 62-1011).

> "Since the enactment of the sections of the statute just quoted this court has definitely committed itself to the general doctrine that in charging statutory offenses, except in those cases in which the statute simply designates and does not describe or name the constituent elements of the offense, informations are sufficient if they charge an offense in the language of the statute. Even the statutory words need not be strictly pursued but others conveying the same meaning may be used." 160 Kan. at 737.

Under this rubric, the information in *Hazen* stated a public offense. The charge was made "substantially in the words of the statute" and did not prejudice the defendant because it "fairly informed" him of the offense charged. The fact that it included additional information about the "means and manner of the assault" did not defeat it. Nor did its failure to include an affirmative allegation that the defendant "intended or attempted to do

32

[a specific person] bodily, physical, or corporal injury" make it insufficient. *Hazen*, 160 Kan. at 738-39.

In summary, applying the greatest degree of synthesis we can muster, interpreting caselaw leading to *Minor* in 1966 indicated that charging documents merely needed to show that a criminal case had been filed in the correct court, that the court's exercise of territorial jurisdiction would be appropriate, and that the facts alleged would constitute a crime under Kansas statutes. Not all errors or omissions would inevitably be fatal to the entire prosecution. Some were subject to correction or could be waived by the defendant or disregarded by the court.

*Minor*, 197 Kan. 296, shifted the Kansas common law on the sufficiency of charging documents in at least two consequential ways.

First, the decision categorically stated what some among earlier cases may merely have been read to suggest:  Charging documents must state every statutory element of the crime alleged in order to be deemed sufficient. Second, it made such sufficiency an explicit precondition to the existence of district court subject matter jurisdiction. See *Minor*, 197 Kan. at 299; see also *State v. Rasch*, 243 Kan. 495, 498, 758 P.2d 214 (1988) (discussing the effect of *Minor*). These two shifts removed any possibility that many charging document errors or omissions could be deemed harmless, nonfatal defects, because any conviction obtained in a proceeding before a court lacking subject matter jurisdiction is void. The jurisdictional nature of the error also meant that a charging document problem could be raised by a defendant at any time, without any negative impact on his or her remedy attributable to the choice of procedural vehicle or delay in employing it. See *Minor*, 197 Kan. at 299 (information failing to allege essential element of crime cannot be cured).

In *Minor*, the defendant had been convicted of manslaughter in the first degree. The wording of the charging document did not match that of the statute violated, failing to allege that the killing would have been a murder at the common law. In the court's view, "[a]t best, the information charges manslaughter in the fourth degree" but, even then, it could not "be commended as a model of draftsman's art." 197 Kan. at 298. The court cited no law beyond one Ohio case—in which the court itself had described the indictment defect as a failure to charge *any* offense—to support its holding that a charging document including all essential elements of an alleged crime was required to endow the district court with subject matter jurisdiction. It stated simply: "In a criminal action pending in the district court, the information or indictment is the jurisdictional instrument upon which the accused stands trial." 197 Kan. at 299 (citing *State v. Cimpritz*, 158 Ohio St. 490, 494, 110 N.E.2d 416 [1953]). The court's election to raise the problem it perceived in the information *sua sponte* further emphasized the subject matter jurisdiction character of its ruling. *Minor*, 197 Kan. at 300-01.

Several cases decided after *Minor* and before *Hall* reflexively adhered to the new analytical pattern of *Minor*. See, *e.g.*, *State v. Wilson*, 240 Kan. 606, 607, 731 P.2d 306 (1987) (first-degree murder charge in information fatally defective for failure to allege that killing of victim was done maliciously, deliberately, and with premeditation); *State v. Jackson*, 239 Kan. 463, 467, 721 P.2d 232 (1986) (indecent liberties charge in complaint fatally defective for failure to allege victim not married to accused, victim less than 16 years old); *State v. Slansky*, 239 Kan. 450, 452-53, 720 P.2d 1054 (1986) (conviction for aggravated assault void; complaint lacked allegation defendant had apparent ability to do bodily harm); *State v. Howell & Taylor*, 226 Kan. 511, 512-14, 601 P.2d 1141 (1979) (aggravated robbery conviction void because of complaint's failure to allege taking was by force, threat of great bodily harm; if a charging document "fatally defective," then, even if all of its allegations proved, defendant still not guilty of statutory crime; "evidence introduced at trial to show commission of the crime sought to have been

charged and the jury instructions thereon have no bearing on" issue of complaint's sufficiency); *State v. Giddings*, 216 Kan. 14, 19-20, 531 P.2d 445 (1975) (second count of forgery cannot support subject matter jurisdiction over that crime, given omission of essential element of intent to defraud; void conviction must be set aside); *State v. Baker*, 197 Kan. 660, 662-64, 421 P.2d 16 (1966) (conviction of second-degree burglary void, set aside because of information's failure to allege burglary occurred "in the nighttime," an essential element of the offense; jury verdict on sufficient evidence of nighttime occurrence and after instruction including missing element do not cure fatal information error).

Other cases decided in this period were somewhat more reflective than reflexive. Although they took no direct issue with *Minor*'s link between charging document sufficiency and the existence of subject matter jurisdiction, they treated sufficiency as a more elastic concept. Viewed in retrospect and taken together, it is apparent to us that these cases foreshadowed the *Hall* decision; see *State v. Wade*, 244 Kan. 136, 140-42, 766 P.2d 811 (1989) (distinguishing *Jackson*, 239 Kan. 463; information's omission of statutory element of aggravated criminal sodomy—victim not married to defendant— excused when information included victim's age of 5; common-sense construction, legal impossibility of marriage eliminate need for allegation); *State v. Micheaux*, 242 Kan. 192, 194-203, 747 P.2d 784 (1987) (discussing history of charging document sufficiency in Kansas; most common rule allows words communicating same meaning as those in criminal statute to be used in charging document; "[w]hile an information may be insufficient if it fails to allege an essential element of the offense, nevertheless, an information should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied"; welfare fraud conviction upheld); *State v. Bird*, 238 Kan. 160, 166-68, 708 P.2d 946 (1985) (information not fatally defective despite no allegations that defendant's conduct in soliciting murder "felonious," certain manner or means to be used to aid and abet, named person to be

35

aided; defendant could have moved to quash information, sought bill of particulars; defendant not misled, disadvantaged; because information charged crime, per statute, other objections to institution of prosecution waived); *State v. Maxwell*, 234 Kan. 393, 397-99, 672 P.2d 590 (1983) (omission of element cured by other information given to defense); *State v. Lucas*, 221 Kan. 88, 89-90, 557 P.2d 1296 (1978) (emphasizing statutory governance of charging document contents, need for basic clarity under modern rationale for pleading in criminal cases; aggravated robbery charge in information sufficient despite lack of allegation of criminal intent; "feloniously" implies missing element); *State v. Lora*, 213 Kan. 184, 187-88, 515 P.2d 1086 (1973) (failure to charge crime underlying aggravated burglary not fatal to case).

And at least one case allowed an oral motion to cure a defect in a charging document that had omitted an essential element of the crime charged, a fix inconsistent with the idea that the charging document must bestow subject matter jurisdiction on the district court from the commencement of the prosecution. See *Rasch*, 243 Kan. at 496-501 (defendant charged with aggravated robbery; complaint failed to allege "taking was by force or threat of harm," an essential element of aggravated robbery; before trial, prosecutor orally moved to amend with no objection from defendant, journal entry filed ordering complaint amended; held, oral amendment cured jurisdictional defect).

This brings us to 1990's *Hall*, 246 Kan. at 753-65, the precedent Dunn urges us to abandon here. It is evident that the *Hall* court attempted to stem what it believed to be a tide of appellate challenges to convictions for deficiencies in charging documents. *Hall*, 246 Kan. at 753 (referencing increase in convictions rendered void for failure to allege all essential elements of charged crime).

Defendant Gary Lee Hall challenged his theft conviction under Count II on the ground that the charging document had omitted an essential element of the crime, *i.e.*, the

adverb "permanently" when stating the nature of his intention to deprive the owner of his cattle. Count II also did not incorporate Count III by reference; Count III had included the word "permanently" in its description of Hall's intent to steal a truck and trailer hauling the Count II cattle. See K.S.A. 22-3201(b) (allowing incorporation of language from different count). Hall had not raised the defective complaint issue in the district court, among other things, failing to file a postconviction motion for arrest of judgment.

The court recognized its prior holdings that "an information which omits one or more of the essential elements of the crime it attempts to charge is jurisdictionally and fatally defective and a conviction on that offense must be reversed." 246 Kan. at 747 (citing *Wilson*, 240 Kan. at 607). Under this rule, Hall's conviction on Count II could not stand. But the court was frankly reluctant to reach this result, remarking on prior "mistaken judicial blending of the concepts of 'jurisdiction'" and saying:

> "We note: (1) the jury was instructed properly as to all of the elements of theft in Counts II and III; (2) the information in Counts II and III cited the theft statute . . . ; (3) no bill of particulars was requested by Hall . . . ; (4) no motion for arrest of judgment was filed . . . ; (5) Hall was represented by experienced retained counsel; and (6) no argument has been advanced by Hall that the omission of 'permanently' in Count II of the information prejudiced him in any way or in any way interfered with the preparation of his defense. We have reversed Count II based upon precedent." 246 Kan. at 758.

The court specifically acknowledged a criminal defendant's right to notice of the charges against him or her under Section 10 of the Bill of Rights in the Kansas Constitution and the United States Bill of Rights' Sixth Amendment. 246 Kan. at 753. Borrowing from Professor Charles Wright's treatise focused on federal law, the court emphasized that the "fundamental purpose" of a charging document is "to inform the defendant of the charge so that the defendant may prepare a defense." 246 Kan. at 754

(citing 1 Wright, Federal Practice and Procedure: Crim. 2d § 125 at 365). Focusing on the notice purpose of charging documents, the court continued:

> "The test for sufficiency ought to be whether it is fair to require the defendant to defend on the basis of the charge as stated in the particular indictment or information. The stated requirement that every ingredient or essential element of the offense should be alleged must be read in the light of the fairness test just mentioned. The information is sufficient, even if an essential averment is faulty in form, if by a fair construction it may be found within the text. All parts of the pleading must be looked to in determining its sufficiency." 246 Kan. at 754.

The court also cited and discussed potentially pertinent Kansas statutes, including K.S.A. 20-301 (each Kansas county shall have district court of record with original jurisdiction of all civil, criminal matters, unless otherwise provided by law); K.S.A. 22-2601 (district court holds exclusive jurisdiction to try all felony, other criminal cases); K.S.A. 22-2103 (criminal code intended to provide just determination of every criminal proceeding); K.S.A. 22-2202 (subsections define complaint, information, indictment); K.S.A. 22-3201 (charging document requirements; right to file written motion for bill of particulars to enable preparation of defense; possibility of amending charging document); K.S.A. 22-3502 (arrest of judgment on motion); and K.S.A. 22-3503 (arrest of judgment without motion).

*Hall* focused on the historical antecedents for statutes allowing arrest of judgment, observing that the permissible grounds for motions for arrest of judgment included "'[*f*]*irst,* that the grand jury who found the indictment had no legal authority to inquire into the offense charged, by reason of it not being within the jurisdiction of the court; *second*, that the facts stated do not constitute a public offense.'" 246 Kan. at 755 (quoting G.S. 1949, 62-1605).

The *Hall* court also recognized that not all prior cases had treated every charging document defect as automatically prejudicial, and thus reversible, error. 246 Kan. at 760 (discussing *Maxwell*, 234 Kan. at 397-99, and *Lora*, 213 Kan. at 187-88, both of which involved failure to charge intended crime underlying aggravated burglary; problem cured by other information supplied to defense; convictions affirmed).

In particular, the court recognized the import of the State's statutorily authorized ability to amend a deficient charging document, stating that amendment cases "have not presented insoluble jurisdictional problems. Jurisdiction does not descend on the proceedings at the moment the amendment is granted or . . . months or years later when [a] *nunc pro tunc* order is signed by the trial court after a ruling on appeal." 246 Kan. at 759-60 (relying upon *Rasch*, 243 Kan. at 501, allowing journal entry memorializing earlier oral amendment to be filed pretrial; *State v. Nunn*, 244 Kan. 207, 224, 768 P.2d 268 [1989], extending *Rasch* holding to cover journal entry filed after trial; *State v. Switzer*, 244 Kan. 449, 456-57, 769 P.2d 645 [1989], allowing oral amendment to be validated by post-appeal *nunc pro tunc* order).

In short, according to the *Hall* court, at least some defects in charging documents could and should be addressed in district court. The court decided to fashion a prospective rule, one under which an appellate court would treat omission of an element of a crime from a charging document as fatal to subject matter jurisdiction only when it was brought to the attention of the presiding district judge before, during, or soon after trial. If, instead, the issue did not surface until the case was on direct appeal or later, the court would treat the error as something far less lethal to the State's case. See 246 Kan. at 747, 758.

"Common sense will be a better guide than arbitrary and artificial rules. The sufficiency of an information should be determined on the basis of practical rather than technical considerations when addressed for the first time on appeal. [Citations omitted.]

. . . .

"The proper procedure for a defendant who contends either that the information does not charge a crime or that the court was without jurisdiction of the crime charged is to utilize the statutory remedy extended by the legislature for these two specific situations—a K.S.A. 22-3502 motion for arrest of judgment. This remedy, available for 10 days after disposition at the trial court level, is of benefit to a defendant. It is preferable to raise either or both of these claims in the trial court rather than waiting to raise the issues for the first time on appeal. If the motion is denied by the trial court, the denial may be appealed, if appropriate, to the Court of Appeals or to this court." 246 Kan. at 754, 760.

Going forward from *Hall*'s decision date, those defendants who timely filed a motion for arrest of judgment or otherwise raised a defective complaint issue in the district court would have their defective charging document challenges reviewed on appeal under the "rationale of [the court's] pre-*Hall* cases." 246 Kan. at 764. Although not crystal clear, it appears from the opinion that such a standard would uphold a conviction under the charging document unless the document was "'so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted.'" 246 Kan. at 763 (quoting *United States v. Watkins*, 709 F.2d 475, 478 [7th Cir. 1983]). If, on the other hand, a defendant raised the challenge for the first time on appeal, the appellate court would

"look to whether the claimed defect in the information ha[d]: (a) prejudiced the defendant in the preparation of his or her defense; (b) impaired in any way defendant's ability to plead the conviction in any subsequent prosecution; or (c) limited in any way defendant's sub8stantial rights to a fair trial under the guarantees of the Sixth Amendment to the United States Constitution and the Kansas Constitution Bill of Rights, § 10. If a

40

defendant is able to establish a claim under either (a), (b), or (c), the defective information claim, raised for the first time on appeal, will be allowed." 246 Kan. at 765.

It is this prospective rule attacked by Dunn in this case. He makes the dual and interconnected points that *Hall* did not explicitly overrule *Minor* or descendant cases holding that charging documents are jurisdictional instruments, and, if such holdings are still good law, *Hall*'s bifurcated review standard is illogical. Simply put, mere improvements in procedure and timeliness cannot cure a lack of indispensable-at-any-procedural-stage subject matter jurisdiction. See *State v. Brown*, 299 Kan. 1021, 1030, 327 P.3d 1002 (2014) (subject matter jurisdiction cannot be conferred by consent, waiver, estoppel); see also *Ryser v. State*, 295 Kan. 452, 456, 284 P.3d 337 (2012) (subject matter jurisdiction cannot be conferred by failing to object or raise jurisdiction on appeal).

Although Dunn is persuasive on this point, this criticism of *Hall* does not end the matter. Our careful study of that decision and its background persuades us that our 1990 predecessors may have neglected to pinpoint *Minor* as the place where Kansas charging document law took a wrong turn, but they had sound instincts. They may have said that there had been a "mistaken judicial blending of the concepts of 'jurisdiction,'" 246 Kan. at 758, when what they really sensed was a "mistaken judicial blending" of the concepts of subject matter jurisdiction, constitutional and statutory charging document sufficiency, and adequate due process and notice protection for defendants; but they deserve appreciation for their effort to tease apart these sources of concern and the need for distinct patterns of analysis. See *State v. Parkhurst*, 845 S.W.2d 31, 34-35 (Mo. 1992) (blending of concepts confuses issues to be determined).

Unfortunately, this court has since failed to seize upon the opportunity presented by a more nuanced reading of the *Hall* decision. Rather, we have routinely paid lip service to its weakest features—insistence on robotic recitation of essential statutory

41

elements rather than allegations of fact that would support those elements in charging documents to deem them sufficient as well as rigid application of the procedural rule making some jurisdictional challenges more equal than others, see *State v. Carr*, 577 U.S. ___, 300 Kan. 1, 185, 331 P.3d 544 (2014), *rev'd and remanded on other grounds* 577 U.S. ___, 136 S. Ct. 633, 193 L. Ed. 2d 535 (2016); *State v. Tapia*, 295 Kan. 978, 986, 287 P.3d 879 (2012) (noting defendant did not question *Hall* decision)—while neglecting to fully appreciate or articulate its strongest feature. See *State v. Inkelaar*, 293 Kan. 414, 433-34, 264 P.3d 81 (2011) (complaint failing to include element fatally defective; trial court lacks jurisdiction to convict); *State v. Gonzales*, 289 Kan. 351, Syl. ¶ 8, 212 P.3d 215 (2009) ("Generally, if a complaint fails to include an essential element of a crime charged, it is fatally defective, and the district court lacks jurisdiction to convict the defendant of the alleged offense."); *State v. Scott*, 286 Kan. 54, Syl. ¶ 2, 183 P.3d 801 (2008) (information omitting one or more essential elements of crime "fatally defective"; conviction on such information must be reversed); see also *State v. Williams*, 299 Kan. 509, 532, 324 P.3d 1078 (2014) (question of whether complaint "conferred" subject matter jurisdiction subject to unlimited review); *State v. McElroy*, 281 Kan. 256, 261, 130 P.3d 100 (2009) (discussing sufficiency of charging document "to confer jurisdiction").

We also have perpetuated the *Minor* sufficiency and jurisdictional instrument rules in cases supposedly suitable for application of the more forgiving post-*Hall* review standard. See, *e.g.*, *State v. Brown*, 299 Kan. 1021, Syl. ¶ 2, 1028-29, 327 P.3d 1002 (2014) ("complaint or information is the jurisdictional instrument in a criminal prosecution"; charging document would be sufficient to invest district court with jurisdiction "over a charged crime if it alleges all of the elements of the offense, if it sufficiently apprises the defendant of the facts against which he or she must defend, and if it is specific enough to safeguard the defendant against a subsequent prosecution for the same offense"; information charging felony murder, aggravated burglary drawn in language of statutes defining crimes, notifying defendant of what he was accused of

doing adequate; no need to name victim of aggravated assault supporting aggravated burglary, which in turn supported felony murder).

In *State v. Rome*, 269 Kan. 47, 5 P.3d 515 (2000), the court considered a charging document supporting a plea to a Class A felony drug conviction for sale of cocaine, which was based on the defendant having two prior state court drug convictions. Years later, after the defendant successfully challenged one of the prior state court convictions and it was replaced with a federal court drug conviction, the defendant challenged the original complaint for failing to set out the two prior convictions as elements of the felony offense. The court recited that *Hall* had changed the "standards of appellate review for claims that a complaint or information was defective, when raised for the first time on appeal," *Rome*, 269 Kan. at 52, but it did not articulate the standard to be applied to a post-*Hall* case. Rather, it reinforced the rule from the unnamed *Minor* both explicitly—"a complaint or information which omits an essential element of a crime is fatally defective for lack of jurisdiction"—and implicitly, holding that the *Rome* complaint passed muster because failure to include particulars of the defendant's prior crimes in the complaint did not constitute omission of elements of the crime; thus the complaint was not "jurisdictionally defective." *Rome*, 269 Kan. at 52; see also *State v. Moody*, 282 Kan. 181, 192-94, 197, 144 P.3d 612 (2006) (challenge to sentence as fourth-time driving under the influence offender on basis of complaint alleging defendant had "two or more" prior offenses; court holds complaint jurisdictionally sound; proof of prior conviction not element of DUI offense).

All of this being said, a few cracks in *Minor*'s and *Hall*'s armor have gradually begun to surface.

In *Carmichael v. State*, 255 Kan. 10, 19, 872 P.2d 240 (1994), we reversed a Court of Appeals panel opinion holding that jurisdiction was lacking on a complaint charging

43

defendant Floyd Carmichael with rape rather than aggravated incest when the victim was Carmichael's daughter. We held that the proper remedy was vacation of Carmichael's sentences and remand to the district court for resentencing on the correct crime, rather than declaring the convictions void. See *Carmichael*, 255 Kan. at 19 (recognizing *State v. Williams*, 250 Kan. 730, 829 P.2d 892 [1992], implicitly overruled *State v. Moore*, 242 Kan. 1, 7, 748 P.2d 833 [1987]; *Moore* had allowed two convictions—one for rape, one for aggravated incest—based on same act). Indeed, the view that a failure to include an essential element in the charging document is a jurisdictional defect had quickly become the minority view in state and federal jurisdictions. See 5 LaFave, Israel, King & Kerr, Crim. Proc. §§ 19.2(e), 19.3(b) (4th ed. 2015); see also *Ex parte Seymour*, 946 So. 2d 536, 539 (Ala. 2006) (validity of indictment is irrelevant to whether trial court had jurisdiction over subject matter of case); *Ortiz*, 162 N.H. at 589 (defective indictment does not deprive trial court of power to adjudicate case);  *Parker v. State*, 1996 OK CR 19, 917 P.2d 980, 985 (rejecting prior precedent that defective information failed to confer jurisdiction upon trial court; defects in information governed by Due Process Clause); *State v. Gentry*, 363 S.C. 93, 101-03, 610 S.E.2d 494 (2005) (noting modern jurisprudence separates concepts of subject matter jurisdiction of the trial court and the sufficiency of the indictment). But see *Johnson*, 219 W. Va. at 702 (because state rule of criminal procedure allows defendant to object to sufficiency of indictment based on failure to state an offense at any time during criminal proceeding, indictment jurisdictional).

Some of our post-*Hall* cases in Kansas also have recognized degrees of charging document inadequacy leading to different results. Allegations of certain elements of certain crimes have been regarded as expendable, when proof of the missing element was considered overwhelming. The flagship of this fleet is *State v. Reyna*, 290 Kan. 666, 234 P.3d 761 (2010). In that case, a jury convicted defendant Israel Reyna of four counts of aggravated indecent liberties with a child. Under Jessica's Law, when an offender is 18

44

years old or older and he or she commits aggravated indecent liberties with a child, the offense is an off-grid crime. On appeal, Reyna argued that the State had failed to allege or present evidence of his age at the time of the offenses. According to Reyna, the State's failure to allege his age in the complaint deprived the district court of jurisdiction to subject him to off-grid sentencing and sentence him to life in prison. We ultimately rejected Reyna's argument and held that "the failure to allege Reyna's age in the complaint is not grounds to invalidate his convictions of the off-grid offense." 290 Kan. at 678. We bolstered our conclusion with the facts that the charging document did include Reyna's year of birth in its caption and did state at the bottom of the page that the charges were for off-grid crimes. 290 Kan. at 678; see also *State v. Holman*, 295 Kan. 116, 151, 284 P.3d 251 (2012) (charging document omitted defendants age; any deficiency did not invalidate defendant's conviction or sentence); *State v. Portillo*, 294 Kan. 242, 252, 274 P.3d 640 (2012) (listing cases rejecting defendant's argument of deficient charging document based on omission of defendant's age); *State v. Sellers*, 292 Kan. 346, 362, 253 P.3d 20 (2011) (State excused from charging element of Jessica's Law defendant's age when evidence in trial record leaves no doubt omission made no practical difference in verdict); *State v. Colston*, 290 Kan. 952, 973-76, 235 P.3d 1234 (2010) (citing *Reyna*; failure to instruct jury on defendant's age as element of crime in Jessica's Law case harmless when evidence of age overwhelming).

And, finally, as emphasized by defendant Dunn, in 2012's *Portillo*, the unanimous court was openly critical of *Hall*'s procedural rule, which granted "retroactive validity" to charging documents and the prosecutions they launched, if the defendant failed to challenge sufficiency before appeal. *Portillo*, 294 Kan. at 255.

Today the cracks in *Minor*'s and *Hall*'s armor widen irreparably to fractures. We now recognize *Minor*'s declaration of Kansas' jurisdictional instrument rule as an unjustified departure from Kansas constitutional and statutory provisions and from our

45

prior caselaw. We therefore overrule it. Charging documents do not bestow or confer subject matter jurisdiction on state courts to adjudicate criminal cases; the Kansas Constitution does. Charging documents need only show that a case has been filed in the correct court, *e.g.*, the district court rather than municipal court; show that the court has territorial jurisdiction over the crime alleged; and allege facts that, if proved beyond a reasonable doubt, would constitute a Kansas crime committed by the defendant. This holding places us securely in the majority of modern courts, a fact that reinforces our conviction that today's revised view of Kansas' true law is sound.

Without *Minor*'s jurisdictional instrument rule as bedrock, we must also reject the rulings of *Hall* built upon it. There is now no reason for *Hall*'s differentiation between treatment of charging document errors and other types of errors. They are not jurisdictional flaws fatal to the State's case when pointed out first to the district court and miraculously without significant effect when pointed out first to an appellate court. We return to these points and their implications more fully below.

*Standard for Charging Document Sufficiency*

The second topic on which we sought additional briefing and argument was the appropriate standard for charging document sufficiency. Having now rejected *Minor*'s jurisdictional instrument rule and *Hall*'s statements dependent upon it, we are compelled to consider *Minor*'s second striking overstatement when compared with the weight of prior law—its categorical declaration that a charging document must include all essential elements of the charged offense to avoid insufficiency. This too we overrule.

The plain language of K.S.A. 22-3201(b) is relatively clear: A charging document shall state "essential facts" constituting the crime charged, and the document "shall be deemed sufficient" if it is "drawn in the language of the statute." The statute's emphasis

46

on "facts" rather than "elements" is repeated in other related statutes and legally significant. A Kansas charging document should be regarded as sufficient now, as it was before *Minor*, when it has alleged facts that would establish the defendant's commission of a crime recognized in Kansas. See *State v. Hazen*, 160 Kan. 733, 736-39, 165 P.2d 234 (1946) (charging document sufficient despite failure to include affirmative allegation that defendant intended a specific person bodily injury); *James*, 157 Kan. at 400 (charging document sufficient despite erroneously alleging crime took place 6 months after defendant's trial); *Keester*, 134 Kan. at 71 (charging document merely discloses jurisdiction; not necessary for charging document to state both counties in which crime took place). Because all crimes are statutorily defined, this is a statute-informed inquiry. The legislature's definition of the crime charged must be compared to the State's factual allegations of the defendant's intention and action. If those factual allegations, proved beyond a reasonable doubt, would justify a verdict of guilty, then the charging document is statutorily sufficient. If the charging document is instead statutorily insufficient, then the State has failed to properly *invoke* the subject matter jurisdiction of the court, and an appropriate remedy must be fashioned. The problem is not a substantive absence of jurisdiction; it is a procedural failure to demonstrate its existence. The availability of a remedy is key. Statutory infirmity does not inevitably fail to bestow subject matter jurisdiction or deprive the court of jurisdiction or destroy jurisdiction. See K.S.A. 22-3502 (arrest of judgment available if charging document does not charge crime *or* court without jurisdiction).

This rule hearkens back to *State v. Morris*, 124 Kan. 505, 260 P. 629 (1927), in which the court congratulated itself on its modern approach. It said:

> "A good form book is a valuable adjunct to the office equipment of a prosecuting attorney, and he would do well to consult it before drawing an information in an important criminal case; but the day is past in this jurisdiction, we trust, when criminals

47

can hope to go unwhipped of justice because of the want of a technical recital in a criminal information which neither misled nor prejudiced them in the preparation or management of their defense." *Morris*, 124 Kan. at 508.

The *Morris* court relied upon the fact that the defendants fully understood they were on trial for the fraudulent making of a check to the prejudice of the rightful owner of the check, of the bank on which the check was drawn, and of the filling station owner expecting to be paid by means of the check. See *Morri*s, 124 Kan. at 508. In other words, there was no constitutional problem arising from the charging document's omission of an element of the crime.

The *Reyna* line of Jessica's Law cases challenging, for the first time on appeal, a charging document's omission of the defendant's age of 18 or over at the time of the crime provides a contemporary illustration of how today's rule should relieve analytical tension arising from *Minor* and *Hall*. See *Reyna*, 290 Kan. at 677-78; see also *State v. Holman*, 295 Kan. 116, 151, 284 P.3d 116 (2012). We have recognized in such cases that the charging document did not include an allegation of the defendant's age, an element of the crime, but ultimately ruled that the omission did not prejudice the defendant's rights as long as the evidence presented to the factfinder on that subject was overwhelming or undisputed. See, *e.g.*, *Sellers*, 292 Kan. at 362. Under the rule we announce today, assuming a defendant succeeds in persuading us to reach the merits of the claim despite a lack of preservation in the district court, we would be more likely to hold that there is no charging document sufficiency problem in the first place. A complaint, indictment, or information that names a defendant or otherwise identifies him or her inherently includes his or her age on the date of the alleged offense. No question of adequate notice to the defendant of his or her own age on the given date is logically possible, and the charging document will have served its purpose of providing notice and a fair opportunity to

48

defend. In other words, there would be no error and we would not reach the prejudice or harmlessness question.

We now turn to the third topic on which we sought additional briefing and argument from the parties.

*The Role of Constitutional Due Process and Notice Provisions*

Our discussion thus far has established that the Kansas Constitution dictates the existence of subject matter jurisdiction as long as the charging document shows that the case has been brought in the correct court in the proper county. In addition, we look to Kansas statutes to determine whether the charging document includes facts that would constitute a crime under Kansas law; it must do so to be statutorily sufficient.

The third topic on which we sought additional guidance from the parties had to do with any additional or distinct role that federal or state constitutional due process and notice principles play in determining charging document sufficiency.

Every criminal defendant has a right under the Fifth and Fourteenth Amendments to due process before he or she can be deprived of life, liberty, or property. In addition, we have long recognized that a criminal defendant has a right under the Sixth Amendment to notice of the charge or charges pursued by the State. See, *e.g.*, *State v. Loudermilk*, 221 Kan. 157, 158-59, 557 P.2d 1229 (1976); see also *State v. Rasch*, 243 Kan. 495, 497, 758 P.2d 214 (1988) (one goal of adequate charging document to inform defendant of alleged offense, in part to enable double jeopardy claim). And Section 10 of the Kansas Constitution Bill of Rights contains its own requirement that a criminal defendant be informed of the charges against him or her. Depending on the form a defendant's challenge to a charging document takes, these constitutional provisions may

apply and may require relief from a conviction or sentence because the document led to prejudicial due process or notice error. See *State v. Wade*, 284 Kan. 527, 537, 161 P.3d 704 (2007) (instruction on elements of aggravated burglary erroneous because it added ulterior felony on which defendant had no notice before evidentiary portion of trial concluded; error prejudiced defendant, required reversal of conviction). But even prejudicial deficiencies in due process or notice do not render the outcome of a prosecution void for lack of subject matter jurisdiction.

One illustrative case is *State v. Seeger*, 65 Kan. 711, 711, 70 P. 599 (1902). In that case, the defendants were convicted of keeping a nuisance after being charged with maintaining

> "'a place where intoxicating liquors are kept for sale, sold, bartered or given away in violation of law, or where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage, or where intoxicating liquors are kept for the purpose of sale, barter or delivery in violation of law, or a place where intoxicating liquors, bottles, glasses, kegs, pumps, bars and other property are kept and used in maintaining such place.'"

This court ruled that the district judge erred by refusing to quash the complaint because, although it was drawn in the language of the statute, its repeated use of the disjunctive "or" failed to inform the defendants of the nature of the offense. "The defendant is entitled to be informed just what is charged against him, and a complaint that he did one thing, or another, or still another, lacks certainty." *Seeger*, 65 Kan. at 712; see also *State v. Kamen*, 166 Kan. 664, 666, 203 P.2d 176 (1949) (notice requirement established law in this jurisdiction). The case was reversed and remanded for further proceedings in district court. It was not dismissed outright. *Seeger*, 65 Kan. at 712.

With the completion of this section's discussion, we have identified three possible types of charging document insufficiency a criminal defendant may challenge. First, either a district or appellate court may be asked to decide whether the document shows that the Kansas constitutional minimums of correct court and correct territory are met. Second, a court may be asked to evaluate whether the document alleges facts about the intent and action on the part of the defendant that, if proved beyond a reasonable doubt, would constitute violation of a Kansas criminal statute. And, third, a court may be asked to determine whether the charging document meets federal and state constitutional standards for due process and notice, such that the defendant has an opportunity to meet and answer the State's evidence and prevent double jeopardy. These types of charging document error may be raised at various points in a prosecution, and attendant circumstances may dictate various forms of relief. We discuss procedure and remedy in the next section.

*Procedure and Remedy*

Our questions about procedure and remedy for defective charging documents formed the foundation of the fifth topic on which we sought further input from the parties. Of the possible sources of charging document insufficiency identified today—failure to show the case is brought in the right court in the right territory, as the Kansas Constitution requires; failure to state facts that would constitute a crime under a Kansas statute; failure to ensure observance of the defendant's federal and state constitutional rights to due process and notice of the charges—none of these pleading defects prevents or destroys the existence of subject matter jurisdiction over criminal cases in our district and appellate courts. Rather, the first qualifies as state constitutional error, the second as statutory error, and the third as federal and state constitutional error.

Now that a defective complaint will no longer be regarded as a telltale marker for the absence of subject matter jurisdiction, the question of appropriate remedy has become more complicated. Its answer, at a minimum, will depend on the nature of the defect alleged by the defendant and the timing of and circumstances surrounding the court's awareness of it. Although we cannot foresee every situation that may arise in a future case, a few general observations can be made today.

As long as an error of the first type is merely a failure to recite or a mistake in recitation and not the actuality of a filing in the wrong court or wrong territory, which does implicate subject matter jurisdiction, see *City of Junction City v. Cadoret*, 263 Kan. 164, Syl. ¶ 5, 946 P.2d 1356 (1997) (municipalities do not have jurisdiction over crimes designated a felony by state statute), then it is most likely to be amenable to remedy or cure by amendment before verdict under K.S.A. 22-3201(e). An amendment to fill in the omission or to correct a fact obvious to both sides will neither charge a new crime nor impair defendant's "substantial rights," including federal and state constitutional rights to due process and notice. Given the nonprejudicial nature of such an error, we also expect that it would not support a successful motion to arrest judgment after trial nor reversal on appeal.

The second type of error, failure to state facts constituting a Kansas crime—although under Kansas law, a statutory rather than a constitutional problem—has the potential for more serious ramifications if not corrected as early as possible in the prosecution. As mentioned in a previous section of this opinion, although the court's constitutionally endowed subject matter jurisdiction is neither prevented nor destroyed by this error, a charging document's failure to describe a Kansas crime impairs invocation of that jurisdiction and carries the risk that due process and notice for the defendant are similarly infirm. The longer the error is able to fester uncorrected, the greater the potential harm to the defendant's rights and the higher the likelihood a motion for bill of

particulars under K.S.A. 22-3201(f) or a K.S.A. 22-3201(e) amendment will be unworkable and the district judge will need to order a mistrial or arrest of judgment or the appellate court a reversal and remand in response to the defendant's complaint. If the State is forced to concede on appeal, as it was at final oral argument in this case, that the language of its charging document failed to state facts constituting a Kansas crime, it will be limited to arguing lack of preservation of the issue, which is discussed in the next section, or harmlessness under K.S.A. 2015 Supp. 60-261 and K.S.A. 60-2105.

The third type of error, a charging document sufficiency problem based on federal or state constitutional due process or notice provisions, like the second type of error, becomes more difficult to remedy the longer it goes unaddressed. A failure to cure the problem early will circumscribe the visible universe of solutions. See *Wade*, 284 Kan. at 537. Certainly, if the defendant's challenge grows out of the Fifth and Fourteenth or the Sixth Amendments, the court will be guided by the test for harmlessness applicable to federal constitutional error. See *Chapman v. California*, 386 U.S. 18, 22-24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). This standard can pose a significant burden to the State. See *State v. Bolze-Sann*, 302 Kan. 198, 216, 352 P.3d 511 (2015). We assume without deciding today that a similarly stringent test will also be applied to evaluate the prejudicial effect of a charging document error implicating state constitutional due process or notice rights.

*Issue Preservation for Appeal and Standard of Review*

The last topic on which we sought additional briefing and argument from the parties dealt with preservation of issues for appeal and the applicable standard of review.

We address preservation first.

Ordinarily a party that wants to pursue an issue on appeal must have preserved that issue in the court below. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). But preservation is a prudential consideration, not an invariable rule. See *State v. Beaman*, 295 Kan. 853, 857, 286 P.3d 876 (2012).

In the case of challenges to alleged defects in institution of criminal proceedings, as with evidentiary rulings under K.S.A. 60-404, the legislature has provided specific guidance on implied waiver of arguments by the defense. We thus begin our discussion with that guidance.

K.S.A. 22-3208(3) forbids "[d]efenses and objections based on defects in the institution" of a prosecution or in the charging document "other than that it fails to show jurisdiction in the court or to charge a crime" to be raised other than by pretrial motion. Failure to follow this provision constitutes waiver, "but the court for cause shown may grant relief from the waiver." K.S.A.  22-3208(3). The next subsection of the statute also makes a plea of guilty or a consent to trial on a charging document a waiver "of defenses and objections based upon the institution" of a prosecution or defects in the charging document "other than it fails to show jurisdiction in the court or to charge a crime." K.S.A. 22-3208(4).

In short, the legislature has expressly excepted the first two types of charging document insufficiency addressed in this opinion from its implied waiver rule. If a charging document fails to show jurisdiction (as required by the Kansas Constitution) or fails to state a Kansas crime under the statutes the legislature has used to define them, those defects need not be raised in pretrial motion. The third type of charging document error discussed in this opinion, because it involves federal and state constitutional rights to due process and notice, may also escape the implied waiver rule because the rule is subject to suspension by a judge for "cause shown." K.S.A. 22-3208(3). If a defendant

can demonstrate that a charging document was so bare bones that he or she was unable to appreciate an infringement of due process or notice rights until evidence began to come in at trial or later, then it is not hard to imagine that a judge of the district court or a majority of judges on an appeals panel will excuse a late challenge to a charging document for "cause shown." We therefore do not regard the statute as much of an impediment to a defendant seeking to raise a charging document challenge for the first time on appeal.

That being said, now that we have established that such challenges do not implicate subject matter jurisdiction, we also see no reason that they must be treated especially favorably when it comes to preservation. Our usual rules apply to charging document challenges by criminal defendants. They should be raised in the district court in the first instance. If they are not, defendants will be tasked with demonstrating on appeal that an exception to the usual preservation rule should be applied. See *Godfrey*, 301 Kan. at 1043 (three recognized exceptions: [1] newly asserted claim involves only question of law arising on proved or admitted facts, determinative of case; [2] consideration of claim necessary to serve ends of justice, prevent denial of fundamental rights; [3] district court right for wrong reason).

Turning to the applicable appellate standard of review, it is no doubt evident to any experienced appellate advocate from all that we have said so far in this opinion that the standard for evaluating assertions of charging document error in future cases will be de novo. The sources of law governing the three types of charging document challenges we have addressed are the Kansas Constitution, statutory definitions of Kansas crimes, and federal and state constitutional provisions. We apply a de novo standard to both constitutional and statutory interpretation. See *In re Care & Treatment of Miller*, 289 Kan. 218, 230, 210 P.3d 625 (2009). We also apply de novo review to written

instruments; and charging documents are writings. See *State v. Tims*, 302 Kan. 536, 546, 355 P.3d 660 (2015).

*Application of Today's Ruling to Dunn*

Dunn has advanced two challenges to Count 8 for forgery in Case 09 CR 333. His "main horse," as his counsel described it in oral argument, is that the count failed to include essential elements of the Kansas crime of forgery and thus the district court lacked subject matter jurisdiction to convict him. His fallback argument has been that Count 8 failed to provide him adequate due process and notice to enable his defense.

There is no dispute that Dunn did not preserve the defective complaint issue by raising it in the district court. It is this lack of preservation that led Dunn to challenge *Hall*'s rule that he would be held to a more difficult appellate standard of review on what he and *Hall* still regarded as an issue of subject matter jurisdiction. We have now broken this nonsensical link. A charging document's failure to include an element of a crime under the defining Kansas statute does not deprive the court of subject matter jurisdiction to convict; it does not even necessarily meet the statute-defined threshold for failure to charge a crime because the facts alleged, rather than the legal elements regurgitated, determine whether the charge is sufficient under the statute defining the crime.

The particular subsection of the forgery statute intended to support Count 8 apparently is K.S.A. 21-3710(a)(2). It provides: "Forgery is knowingly and with intent to defraud . . . issuing or delivering such written instrument knowing it to have been thus made, altered or endorsed." The "such written instrument" and "thus made" language in subsection (2) evidently refer back to subsection (1) of the statute which defines forgery as:

"Making, altering or endorsing any written instrument in such manner that it purports to have been made, altered or endorsed by another person, either real or fictitious, and if a real person without the authority of such person; or altering any written instrument in such manner that it purports to have been made at another time or with difference provisions without the authority of the maker thereof; or making, altering or endorsing any written instrument in such manner that it purports to have been made, altered or endorsed with the authority of one who did not give such authority." K.S.A. 21-3710(a)(1).

To say that this language from the forgery statute is not a model of clarity is an obvious understatement. But, even with the difficulty of following it acknowledged, the language from Count 8 still goes it one better on the gibberish meter. That language, again, for ease of reader reference, stated:

"That on or about the 27th day of July, 2009, in Labette County, Kansas, Jerold M. Dunn, then and there being present did unlawfully, feloniously and knowingly issue[] or deliver[] a check (#1050) which he/she knew had been made, altered or endorsed so that it appeared to have been made, in violation of K.S.A. 21-3710 and against the peace and dignity of the State of Kansas. (Forgery-Passing) Severity level 8 Non-person Felony, (7-23 months)."

At a minimum, this count fails to allege the fact that Dunn intended to defraud Shaw or the Smoke Shop when he passed check #1050, and the State made no effort to augment the language of Count 8 by incorporating by reference Count 4, which dealt with the same check. K.S.A. 22-3201(b) explicitly permitted such incorporation, and the Court of Appeals erred when it treated the defective Count 8 as though the State had taken that simple step to preserve the viability of its prosecution. Compounding that error perhaps is the fact that Dunn was never bound over on Count 4.

57

Under these circumstances, we hold that the State failed to charge forgery in Count 8, a statutory error subject to a harmlessness inquiry under K.S.A. 2015 Supp. 60-261 and K.S.A. 60-2105. Under those statutes, we examine whether the defect affected Dunn's substantial rights.

We conclude that Dunn's substantial rights were not affected by the charging document error because he and his trial counsel clearly understood exactly what the State sought to prove on Count 8. Indeed, his defense was that he was authorized by Shaw to use check #1050 for his purchases and that he did not intend to defraud her or the Smoke Shop in the transaction. The jury did not accept his version of events, but that does not mean we are confronted with reversible error.

Dunn's backup argument—that he also was deprived of constitutionally guaranteed due process and notice by the defective Count 8—also fails to compel reversal of his conviction. Even if we were to hold that Count 8 also was so poorly drafted that it failed to provide Dunn with enough information to defend, it is plain that he and his lawyer had the necessary information in spite of the defect. He is not entitled to reversal under the federal constitutional harmlessness standard of *Chapman*, 386 U.S. at 24, which applies to federal due process and notice claims. To the extent Dunn relies on the Kansas Constitution for his due process and notice claims, we also can safely say any alleged error was harmless.

SUFFICIENCY OF EVIDENCE TO SUPPORT STALKING CONVICTION

The appellate standard of review on sufficiency of evidence is often stated and well known:

58

"When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Stafford*, 296 Kan. 25, 53, 290 P.3d 562 (2012); see *State v. Frye*, 294 Kan. 364, 374, 277 P.3d 1091 (2012) ('[C]onvictions arising from bench trials and those arising from jury trials are reviewed by this court utilizing the same standards on appeal.'). In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility. *Stafford*, 296 Kan. at 53." *State v. Kendall*, 300 Kan. 515, 523, 331 P.3d 763 (2014).

Under K.S.A. 2008 Supp. 21-3438(a)(3), the State was required to prove that Dunn intentionally or recklessly violated a protection from abuse order during his encounter with Shaw at the bank, that his conduct "would cause a reasonable person to fear for such person's safety, . . . and [that] the targeted person [was] actually placed in such fear."

Dunn argues that there was no evidence Shaw had any particularized fear for her safety. He also contends that there was no evidence to support a conclusion that a reasonable person would fear for his or her safety based on Dunn's actions.

This challenge has no merit.

The evidence in this case included testimony about Dunn's appearance at the bank shortly before Shaw made what was a routine work stop there. The bank teller described Shaw, after seeing Dunn, as "real nervous and afraid, scared, upset." The teller also heard Shaw describe Dunn's appearance at the bank as "harassment." Additional evidence showed that Dunn approached Shaw as she left the bank and, with a "real mad" look, "got right into her face." He positioned himself between Shaw's car and its door, which

prevented her from leaving. The teller heard Shaw tell Dunn to leave her alone and further testified that she was concerned for Shaw's safety. Shaw testified that she was afraid on the day of her confrontation with Dunn at the bank.

Dunn argues that all of this evidence must be viewed in light of the fact that Dunn and Shaw later reconciled. According to him, the reconciliation presents "real questions about whether [Shaw] had any genuine fear of [Dunn]."

Our first observation is that, as a matter of logic and legal import, a later reconciliation does not magically remake a couple's violent or threatening history. Moreover, Dunn's challenge essentially asks this court to make a credibility redetermination, something an appellate court does not do. *State v. Sitlington*, 291 Kan. 458, Syl. ¶ 7, 241 P.3d 1003 (2010) ("The determination of credibility of the victim is solely within the province of the factfinder, and the factfinder's determination is not to be set aside unless the witness' testimony is so incredible and improbable as to defy belief.").

CONCLUSION

For all of the reasons stated above, we affirm the forgery and stalking convictions of defendant Jerold Michael Dunn. Although the State's Count 8 was deficient, the error was not reversible; and defendant's challenge to the sufficiency of the evidence supporting his stalking conviction is without merit.

The judgment of the district court is affirmed. The decision of the Court of Appeals is affirmed, although for reasons other than those cited by the panel on the forgery count.

                                    * * *

JOHNSON, J., dissenting in part:  I dissent from that portion of the majority opinion that holds that a district court—part of the judicial branch of our government—has the authority (jurisdiction) to convict a person of a crime when the prosecutor—part of the executive branch of our government—has failed to charge that person with any crime under Kansas law. The executive branch is charged with enforcing the laws, including choosing the crime to be charged under the circumstances.

I agree with the majority's determination that the complaint, which alleged that Dunn issued or delivered a check "which he[] knew had been made . . . so that it appeared to have been made," obviously did not state facts that constitute a Kansas crime. I frequently make checks that appear to be made. Consequently, "the State . . . failed to properly *invoke* the subject matter jurisdiction of the court." Slip op. at 47. I would not effect such an invocation, *i.e.*, perform the prosecutor's enforcement-of-the-laws function, under the guise of a judicial determination of harmlessness.