NOT DESIGNATED FOR PUBLICATION

No. 117,042

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOCELYN RENEE JOINER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; DAVID DEBENHAM, judge. Opinion filed December 8, 2017. Affirmed in part, vacated in part, and remanded with directions.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, deputy district attorney, *Michael F. Kagay,* district attorney, and *Derek Schmidt,* attorney general, for appellee.

Before ARNOLD-BURGER, C.J., LEBEN and POWELL, JJ.

PER CURIAM: Trey Dantzson burglarized a Topeka home, where he stole several items, including a flat-screen television and a 7-inch computer tablet. Over the next 10 days, Dantzson's girlfriend, Jocelyn Joiner, exchanged both items for cash at an area pawn shop. Each time, she signed transaction receipts certifying that she was either the legal owner or was acting as the agent for the legal owner of the items.

Investigation of the burglary led police to Dantzson, who admitted to the burglary. Joiner admitted to officers that she sold the stolen items to the pawnshop but said she didn't know the items were stolen until after she sold them.

At a jury trial, Joiner was convicted of one count of making false information, in violation of K.S.A. 2016 Supp. 21-5824 (a level 8 nonperson felony). The district court sentenced her to probation for 18 months with an underlying 16-month prison sentence to be served if she didn't successfully complete her probation. The district court also ordered Joiner to pay a $2,700 fee to the Board of Indigents' Defense Services to compensate the state for the expense of her court-appointed attorney.

On appeal, Joiner argues that the State failed to present sufficient evidence to support her conviction of making false information, primarily claiming that the State didn't prove that she had read the transaction receipts before she signed them. But the State showed that Joiner signed each receipt twice, that she had experience selling items to pawn shops, and that she had orally confirmed that she was the owner of the television and the tablet. So the jury could reasonably have concluded that she made a written instrument that she knew to be false in some significant way.

Joiner also claims the $2,700 fee the district court imposed exceeded the maximum amount allowed under Kansas law, $2,100. The State concedes that the district court erred in the imposition of that fee. We therefore vacate the imposition of that fee and remand for reconsideration of its assessment.

FACTUAL AND PROCEDURAL BACKGROUND

On March 18, 2016, Trey Dantzson burglarized and stole property from Trevon Ewing's Topeka home while his girlfriend, appellant Jocelyn Joiner, was at a job interview. Ewing reported the burglary to officers on the same day. The officer who

2

responded to the call reported that the property stolen from Ewing's home included a 48-inch Emerson flat-screen television and a 7-inch Visual Land Android tablet.

On the day of the burglary, Dantzson picked up Joiner from her job interview and drove Joiner to Capital City Pawn in Topeka so she could pawn the stolen television. Joiner presented a valid Kansas-issued photo ID to the pawnbroker—Alex Gutierrez—at Capital Pawn, who then recorded Joiner's information onto a transaction receipt. Gutierrez then asked Joiner a series of standard questions about the TV: how long ago Joiner purchased it; where she purchased it; and how long she had had it. Although Gutierrez didn't specifically remember whether Joiner orally confirmed she owned the television, Joiner had signed the transaction receipt certifying that "I am the legal owner of the item(s) listed on this document, or the agent of the legal owner who is authorized to sell this property." Joiner exchanged the television for $110.

Ten days later, Joiner went to Capital City Pawn's second Topeka location to sell the tablet. She again provided a state photo ID; a different broker—Mason Gomez—copied her information onto a transaction receipt. Gomez asked Joiner the standard questions about the tablet to determine whether she was the owner, and although Gomez couldn't remember Joiner's specific answers, he indicated that Joiner acted like the tablet was hers. After agreeing to exchange the tablet for $20, Joiner signed the transaction receipt certifying that she was the tablet's legal owner or was acting as the agent for the legal owner.

After investigating the burglary, officers linked Dantzson and Joiner to the crime. Dantzson admitted to committing the burglary and indicated that he gave some of the stolen property to Joiner so she could pawn it. Dantzson told officers that he admitted to Joiner that he stole the items—that "it was a mutual thing, and [Dantzson] told Ms. Joiner where [the television and tablet] had come from." Dantzson also told an officer that "[Joiner] really didn't know [where the items came from] but I told her." The officer

3

testified that Joiner initially told him "that [Dantzson] never did tell her that [the items were stolen] and that she never asked[,]" but that Joiner's "final statement to [the officer] was that she did know [the items] were stolen but not until after she had pawned them."

The State charged Joiner with one count of making false information, a violation of K.S.A. 2016 Supp. 21-5824 (a level 8 nonperson felony), and one count of possession of stolen property worth less than $1,000, a violation of K.S.A. 2016 Supp. 21-5801 (a class A nonperson misdemeanor). Joiner pled not guilty.

Joiner and Dantzson both testified at Joiner's trial. Joiner admitted to selling the TV and tablet to Capital City Pawn but denied knowing they were stolen when she made the transactions. On cross-examination, Joiner testified that when she went to pawn the television, the pawnshop employees never asked her whether she owned the TV. Joiner said that the pawnshop employees always made an exception to following the standard protocol when she pawned items there because she was a frequent customer and they knew her.

The jury found Joiner guilty of making false information but acquitted her of the possession charge. The court sentenced Joiner to probation for 18 months with an underlying 16-month prison term to be served if she didn't successfully complete her probation. The court also ordered Joiner to pay $2,700 to the Board of Indigents' Defense Services to reimburse the state for the cost of her court-appointed attorney. Joiner has appealed to our court.

ANALYSIS

Joiner first claims that the State failed to present sufficient evidence to support her conviction for making false information. She argues that the State's evidence was

4

insufficient to prove that she "had actual knowledge that [the transaction receipts] reported false information."

A jury instruction, not challenged on appeal, told the jury the elements the State had to prove:

"1.  [Joiner] made, generated, distributed, drew, caused to be made, generated, distributed or drawn a written instrument.
"2.  [Joiner] knew that such information falsely stated or represented some material matter.
"3.  [Joiner] intended to defraud or obstruct the detection of a theft.
"4.  That this act occurred on or about [March 18 and 28, 2016], in Shawnee County, Kansas."

Joiner admits the State proved three of the four elements. She doesn't dispute the sufficiency of the State's evidence that she made written instruments—the transaction receipts—on the dates noted and in Shawnee County. Likewise, Joiner concedes that the State sufficiently proved that she signed the transaction receipts with the intent to defraud or obstruct the detection of a theft. We are left to determine only whether the State's evidence was sufficient to prove the second element: that Joiner knew the information she provided to Capital City Pawn was false.

We review sufficiency-of-the-evidence claims to determine whether, considering all of the evidence in the light most favorable to the State, a reasonable factfinder could have found that the State proved the charge beyond a reasonable doubt. *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). We do not reweigh the evidence, resolve evidentiary conflicts, or determine the credibility of witnesses. *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016).

Joiner claims the State failed to prove that she *knew* she was providing Capital City Pawn with false information. Although Joiner admits she "signed boilerplate

5

contracts indicating that she had legal authority to sell the [TV and tablet,]" she contends the State didn't produce any evidence indicating that she actually read those contracts.

In support of her claim, Joiner cites to *State v. Conner*, 4 Kan. App. 2d 207, 603 P.2d 1038 (1979). In *Conner*, the State charged the defendant with making a false writing after learning that the bank had created a lost-and-stolen report in reliance on the defendant's false statement regarding a financial transaction. We reversed Conner's conviction, holding that the State had produced "no evidence [indicating the] defendant saw the written instrument or was made aware of its contents." 4 Kan. App. 2d at 209.

But our case differs from *Conner* in important ways. The State in *Conner* didn't prove that the defendant saw the report; we noted that the bank employee "did not show [the report] to the defendant or ask her to adopt it as her own." 4 Kan. App. 2d at 208. Here, there is no dispute as to whether Joiner actually saw the written instrument—she signed the two transaction receipts a total of four times. Since the *Conner* defendant never saw the written instrument, she couldn't reasonably be held responsible for the contents of the report even though her misrepresentation to the bank spurred the report's creation. Here, Joiner saw the written instruments and signed them.

Joiner's argument essentially asks us to act as a factfinder to determine whether Joiner read the transaction receipts that she signed. But making that determination was the jury's job, not ours. The jury weighed the evidence, resolved evidentiary conflicts, and determined the credibility of witnesses when it reached its conclusion that Joiner knew that what she signed materially misrepresented the facts. We cannot second-guess that factual conclusion. *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016).

As we noted previously, we take the facts in the light most favorable to the State. We do that because the jury found in the State's favor. In that light, these facts are sufficient to support the jury's conclusion and Joiner's conviction:

6

- Joiner had physical possession of the transaction receipts when she signed them, certifying that she had legal authority to perform the transaction.
- Joiner signed each receipt twice.
- Joiner has a long history of transacting with pawn shops.
- Before signing the transaction receipts, Joiner orally confirmed that she was the legal owner of the TV and tablet.

Joiner's history of dealing with pawnshops supports an inference that she was familiar with the shops' standard operating procedures, including the requirement to verify a customer's legal authority to perform a transaction. Likewise, since Joiner had an established history of dealing with pawnshops, a factfinder could fairly infer that she had, at some point, read the contractual language on the transaction receipts. So it's reasonable to infer that she knew she was certifying her authority to sell goods when she signed the form. And she doesn't dispute her lack of true authority to do so. The State's evidence was sufficient to support Joiner's conviction.

Joiner's second claim is that the district court erred by imposing a $2,700 fee to reimburse the Board of Indigents' Defense Services for the cost of his court-appointed attorney. The State concedes the district court's error.

A Kansas statute, K.S.A. 22-4522, gives the Board of Indigents' Defense Services authority to "adopt rules and regulations . . . which are necessary for the operation of the [Board] and the performance of its duties . . . ." K.S.A. 22-4522(e). In addition, K.S.A. 22-4522 requires the Board to "adopt and maintain reimbursement tables which set forth the cost to the [Board] for each separate category of service provided." K.S.A. 22-4522(e)(5).

The reimbursement tables relevant to Joiner's case are found in an administrative regulation adopted by the Board, K.A.R. 105-5-7. It provides that compensation for felony cases in the category of Joiner's can't exceed $2,100:

7

"[R]easonable compensation for felony cases tried . . . and submitted to a judge or jury for adjudication . . . *shall not exceed the following*: (a) $2,100 for felonies classified as non-drug offenses of severity levels 5 through 10; (b) $2,800 for felonies classified as non-drug offenses of severity level 4 and felonies classified as drug offenses of severity levels 2 through 5 . . . ." (Emphasis added.) K.A.R. 105-5-7(a)-(b).

Joiner was charged with and convicted of making false information, a level 8 nonperson, nondrug felony. So Joiner's case falls squarely under the $2,100 limit. Both parties agree that the court's assessment of $2,700 exceeded this maximum amount, so we vacate the fee assessed by the court and remand for resentencing on this issue in a manner consistent with K.S.A. 22-4522 and K.A.R. 105-5-7.

The district court's judgment is otherwise affirmed.

8