NOT DESIGNATED FOR PUBLICATION

No. 123,201

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of G.R.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Shawnee District Court; RACHEL L. PICKERING, judge. Opinion filed March 19, 2021. Affirmed.

*John Paul D. Washburn*, of Washburn Law Office, LLC, of Topeka, for appellant natural mother.

*Morgan L. Hall*, deputy district attorney, for appellee.

Before POWELL, P.J., GREEN and HILL, JJ.

POWELL, J.: Mother appeals the district court's determination that G.R. is a child in need of care (CINC), arguing the case should be dismissed because it was originally filed in the wrong county and that insufficient evidence supports the CINC finding. For reasons explained below, we disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Mother was visiting a friend in Parsons, Kansas, with her four-year-old daughter, G.R., on March 22, 2019. Apparently, Mother had hoped to return to Topeka that same day but did not want to drive back late in the evening, so she decided to spend the night. In an effort to save money, Mother went to the Parsons police station seeking a hotel voucher to stay the night. As required by the department's protocol, the dispatcher ran

1

Mother's driver's license and discovered she had three outstanding warrants in Coffey, Jackson, and Osage counties. Dispatch informed Officer Keenan Roberts, who asked Mother to come to the lobby to help find a placement for G.R. because Mother was being arrested. Mother suggested her fiancé, who lived in town, but he was not a viable person because he did not have a home, was not a blood relative, and had been recently released from prison.

Roberts contacted juvenile intake to provide a placement for G.R., which is required when a child is placed in police protective custody. Mother then suggested calling her sister, G.R.'s aunt, who lived in Topeka. G.R.'s aunt agreed to come down and take custody of G.R. Roberts then referred the matter to the Labette County Attorney for a CINC case to be filed.

Three days later, the Labette County Attorney filed a CINC petition alleging G.R. was without adequate parental care or control. The Labette County District Court granted the State temporary custody with Mother's consent and transferred the case to Shawnee County because G.R. was currently residing in Shawnee County with her aunt. The Shawnee County District Court accepted the transfer of venue and later adjudicated G.R. a child in need of care on February 20, 2020.

At the adjudication hearing, Roberts testified about the events leading to G.R. being placed in State custody. Payton Huckabay, who had been G.R.'s permanency case manager with KVC from April 2019 until she left KVC in December 2019, testified that her main concerns for Mother were finding a stable home for G.R. and drug usage. Mother stayed on and off with different friends, lacked stable housing, and failed to complete several required drug tests. Mother tested positive for drugs on three occasions: for cocaine on May 28, 2019; for marijuana on August 15, 2019; and for methamphetamines on August 28, 2019. Mother denied the seriousness of her drug use to Huckabay. Mother participated in once-a-week supervised visitations, which Huckabay

2

said went fine, except Mother was often late or would cancel. Mother told Huckabay she would attend inpatient drug treatment but then failed to do so. Mother consistently had a job, but she never provided Huckabay with pay stubs to verify income. Mother had not visited G.R. from September 2019 to December 2019 due to cancellations, no shows, and the inability to pass two consecutive drug tests. Huckabay also testified that Father was incarcerated.

Jenny Emfinger, Huckabay's supervisor, took over as case manager when Huckabay left KVC until the end of January 2020. Emfinger testified Mother had a visit with G.R. at the end of January 2020, but Mother had been unable to visit earlier in January because she had been incarcerated.

Mother testified on her own behalf and stated she had been living with her mother, G.R.'s grandmother. Mother had been living there for over half a year but never told KVC that was her address. Mother testified she missed several drug tests because she could not get from work to the tests in time. Father also testified in support of Mother.

The district court determined G.R. was a CINC under K.S.A. 2019 Supp. 38-2202(d)(1) because G.R. lacked adequate parental care and control. The district court found this determination was supported because of Mother's past and current legal troubles, lack of stable housing, drug use, and lack of stable income.

Mother timely appeals.

I.     WAS VENUE PROPER IN LABETTE COUNTY?

Mother first argues this case should have been dismissed because venue was improper in Labette County as both Mother and G.R. lived in Shawnee County and G.R. had been living in Shawnee County with her aunt immediately prior to the Labette

3

County Attorney filing this CINC action. The State argues venue in Labette County was proper because G.R. was taken into custody in Labette County and was temporarily in the custody of the Labette County authorities while she was placed with her aunt.

*Standard of Review*

Whether venue is proper is a legal question subject to de novo review. *State v. McElroy*, 281 Kan. 256, 264, 130 P.3d 100 (2006), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016).

*Analysis*

"[I]n Kansas, statutes determine the proper venue for CINC proceedings." *In re A.M.W.*, No. 105,878, 2011 WL 6311114, at *1 (Kan. App. 2011) (unpublished opinion). Venue in a CINC case is proper either "in the county of child's residence or in the county where the child is found." K.S.A. 2020 Supp. 38-2204(a).

The CINC petition was originally filed in Labette County. The Labette County District Court issued a temporary order placing G.R. in the custody of the State with Mother's consent and transferred the case to Shawnee County. Here, no one disputes that Mother and G.R. resided in Shawnee County before Mother's arrest in Labette County. Likewise, no one disputes that Mother continued to reside in Shawnee County or that G.R. was placed with her aunt in Shawnee County. The issue revolves around one point in time—March 25, 2019—the date the petition was filed. Mother argues venue in Labette County was improper because G.R. was with her aunt in Shawnee County on that date. The State argues Labette County temporarily placed G.R. with her aunt and retained custody over G.R.

4

We need not answer the question of whether venue was proper in Labette County at the time of the filing of the CINC petition because, even if we assume that venue was improper in Labette County, dismissal is not the appropriate remedy as Mother requests. Transfer is the appropriate remedy, and that was done here. See *Johnson v. Zmuda*, 59 Kan. App. 2d___, 2021 WL 300367, at *4 (Kan. App. 2021) (transfer preferred over dismissal as venue not question of subject matter jurisdiction). While venue questions have typically been couched in terms of jurisdiction, see *McElroy*, 281 Kan. at 264, venue does not involve subject matter jurisdiction, which is the power of the court to hear and decide the matter. See *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, Syl. ¶ 1, 204 P.3d 562 (2009) (subject matter jurisdiction defines court's ability to hear case). Under K.S.A. 2020 Supp. 38-2203(c), a district court "acquires jurisdiction over a child by the filing of a petition pursuant to this code." Moreover, the revised Kansas Code for Care of Children, K.S.A. 2020 Supp. 38-2201 et seq., provides that any party or the district court may transfer the case to the court of the county where the child is physically present or where the parent or parents reside. K.S.A. 2020 Supp. 38-2204(b)(1), (2); see also K.S.A. 60-611 (civil venue statute provides case filed in wrong district court "shall be transferred to a court of proper jurisdiction of any county of proper venue."); *Cansler v. State*, 234 Kan. 554, 573, 675 P.2d 57 (1984) (improper venue results not "in dismissal of the action, but merely transfer").

Any venue issue was cured when the Labette County District Court granted temporary custody to the State with Mother's consent and then transferred the case to the Shawnee County District Court, finding Shawnee County was a better venue because Shawnee County was G.R. and Mother's home county and G.R. was placed with a relative living there. After the granting of temporary custody of G.R. to the State, all other orders were issued from the Shawnee County District Court, including the adjudication finding G.R. a CINC. Given Mother's position that Shawnee County is where she resides and where G.R. is found, the Shawnee County District Court was a proper venue and it had the jurisdiction and authority to issue its CINC finding.

5

II.    DID SUFFICIENT EVIDENCE SUPPORT FINDING G.R. WAS A CHILD IN NEED OF
       CARE?

Mother argues G.R. was not a child in need of care on the date the CINC petition was filed. Mother argues the district court improperly focused on her financial situation and that the testimony shows she did well in keeping her employment; there was no evidence her drug use affected her ability to raise G.R.; and she showed good parenting skills at her supervised visitations. The State responds the evidence showed Mother never provided information about stable housing; her testimony about her job and finances was conflicting; and Mother's drug use did affect G.R. because Mother went to jail and was facing more criminal charges.

*Standard of Review*

"When we review a district court's determination that a child is in need of care, we determine whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced that a rational fact-finder could have found it highly probable, i.e., by clear and convincing evidence," that the child was a CINC. *In re D.H.*, 57 Kan. App. 2d 421, 430, 453 P.3d 870 (2019). In reviewing a CINC finding for sufficient evidence, we do not weigh conflicting evidence, address witness credibility, or redetermine questions of fact. To the extent review requires the interpretation of statutes, our review is de novo. 57 Kan. App. 2d at 430.

*Analysis*

The district court found G.R. was a child in need of care under K.S.A. 2019 Supp. 38-2202(d)(1), meaning G.R. was less than 18 years of age at the time of the filing of the petition who was "without adequate parental care, control or subsistence and the condition is not due solely to the lack of financial means of the child's parents or other

6

custodian." The State must prove a child is in need of care by clear and convincing evidence. K.S.A. 2020 Supp. 38-2250.

Mother argues G.W. was not a CINC at the time the petition was filed. But Mother looks toward the wrong timeframe. The plain language of K.S.A. 2020 Supp. 38-2202 does not require the district court to determine a child is in need of care "based only on the circumstances that existed on the day the *CINC petition* was filed." *In re D.H.*, 57 Kan. App. 2d at 428. The CINC criterion provided in K.S.A. 2020 Supp. 38-2202(d)(1) "is framed in the present tense so an adjudication decision under this subsection should be limited to a view of the child's present circumstances at the time of the adjudication hearing." 57 Kan. App. 2d at 433.

The district court's reasons for determining G.R. was a CINC can be sorted into four points: (1) Mother's legal trouble; (2) Mother's lack of stable housing; (3) Mother's drug use; and (4) Mother's lack of stable income. All four are supported by sufficient evidence.

1. *Mother's legal trouble*

First, the district court found Mother was unable to exercise adequate parental care or control over G.R. because of her ongoing legal troubles. On the night Roberts took G.R. into custody, Mother was arrested on three outstanding warrants. One of those— the Jackson County warrant—was still unresolved on the day of the CINC adjudication. In fact, law enforcement officers from Jackson County were at the Shawnee County courthouse on the day of the adjudication to take Mother into custody if she could not pay her fine. Mother found a friend from whom she could borrow the money, but the friend had to leave the courthouse before giving Mother the money. At the time the district court determined G.R. was a CINC, Mother's Jackson County case was still unresolved and she was facing jail.

Mother was also facing additional charges in a pending case in Topeka Municipal Court, and the district court noted Mother had been incarcerated several times during the pendency of this case, including the night G.R. was taken into custody, in September 2019, and in January 2020. Evidence in the record supports the district court's determination that Mother had been imprisoned multiple times during the case and was in danger of being placed in jail again.

### 2. *Mother's lack of stable housing*

Second, the district court found Mother lacked stable housing. Huckabay testified Mother had been staying off and on with different friends. Mother never provided an address for where she was living. Mother claimed she had been living with Grandmother for several months and Grandmother's house was a safe place for G.R. But Mother admitted she never told anyone she was living with Grandmother. Mother said her living with Grandmother was not set in stone because no adult wants to live with a parent and she was worried about arguments with Grandmother. Mother also admitted she used a sister's address as her mailing address. Mother's own testimony showed she lacked a stable address. No evidence of stable housing exists in the record.

### 3. *Mother's drug use*

Third, the district court was concerned with Mother's drug use. During this case, Mother tested positive for cocaine, methamphetamine, and marijuana. Additionally, Mother missed several drug test appointments.

The district court recognized a causal connection is required between the drug use and the ability to care for the child. The district court found Mother's drug use had led to her incarceration and her inability to care for G.R. while incarcerated. One of the warrants Mother was arrested for in Labette County was for a criminal case in Coffey

County where Mother was charged with possession of marijuana, possession of paraphernalia, and operating a car without an interlock device. The new Topeka Municipal Court case involved charges for unlawful possession of marijuana and possession use of a stimulant, controlled substance, or drug paraphernalia, among other charges.

The district court also was concerned with Mother's refusal to seek drug treatment. While Mother completed a drug assessment and inpatient drug treatment was recommended, Mother chose not to go. Additionally, Mother did not visit G.R. from October 2019 until late January 2020 because she did not have two consecutive clean drug tests, which were required for visitation. At the time of the CINC adjudication, Mother could not have visitation with G.R. because she lacked two consecutive clean drug tests.

### 4. *Mother's lack of stable income*

Finally, the district court discussed Mother's lack of stable income. The district court did not find Mother's testimony that she had stable income to be credible. Mother testified she lost her job after being arrested and she had worked different jobs during this case. Huckabay testified she never received any pay stubs to verify Mother's employment.

Given the evidence in the record and viewing that evidence in the light most favorable to the State, sufficient evidence exists from which a rational fact-finder could find G.R. was a CINC.

Affirmed.