NOT DESIGNATED FOR PUBLICATION

No. 123,906

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

REGENNA LEGGETT,
*Appellee*,

v.

TIM A. HONTZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Doniphan District Court; JAMES A. PATTON, judge. Opinion filed April 29, 2022.
Affirmed.

*John W. Fresh*, of Farris, Fresh & Werring Law Offices, of Atchison, for appellant.

*William C. O'Keefe*, of O'Keefe Law Office, of Seneca, for appellee.

Before BRUNS, P.J., CLINE, J., and JAMES L. BURGESS, S.J.

PER CURIAM:  Regenna Leggett and Tim Hontz opened a salvage yard in 2016. To do so, they formed two businesses—the salvage yard operated under You Pick It, LLC, and L & H, LLC owned the real estate. Leggett contributed a substantial amount of money to You Pick It, while Hontz brought his connections from working in the towing industry and his knowledge of cars. Both had equal ownership interests in the companies. They eventually sought to distribute the companies' assets. Following a bench trial, the district court granted Leggett the companies' assets and liabilities but awarded Hontz $83,500 for his contributions. On appeal, the parties argue: The district court erred as a matter of law by failing to equally divide the assets; the court erred by awarding Hontz

1

$83,500; and partnership law should govern the distribution of assets. The district court did not err, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2015, Leggett began living with Hontz at his home in Wathena. At the time, Hontz operated a towing business and tow lot in the nearby city of Elwood. Due to the irregular hours, Hontz and Leggett discussed opening their own business. They agreed upon a salvage yard.

They eventually formed two companies. You Pick It, LLC was formed in September 2015, and L & H, LLC was formed in July 2016. The salvage yard operated under You Pick It. L & H owned 10 acres of land on which the salvage yard operated; the land was gifted to Leggett and Hontz by the City of Elwood in 2015 and transferred to the company in 2016. L & H also owned a 4-acre parcel, purchased in 2018, used to store cars. Leggett and Hontz owned equal ownership interests in the companies, though their operating agreements were never signed.

After receiving the 10 acres, Leggett contributed money to You Pick It to build a fence and various buildings, purchase equipment, and, through Hontz' connections, acquire cars for inventory. Hontz primarily provided his connections in towing and his knowledge about pricing and selling cars and car parts, though he also traded a tow truck for equipment and contributed some cars from his tow lot. You Pick It opened in the spring of 2016.

Leggett performed the daily bookkeeping for the companies. She and Hontz did not receive a salary. They drew funds from You Pick It's account to pay for personal expenses, such as Hontz' mortgage, groceries, entertainment, bills, and vacations. Instead of clearly delineating personal and business expenses, Leggett would pay some business

expenses using her personal account. Likewise, she would deposit money from her personal account into the business account to cover personal expenses.

Leggett and Hontz' relationship ended in December 2018. In January 2019, Leggett filed a petition to divide the nonmarital assets and debts they had acquired. In response, Hontz filed a counterclaim requesting an accounting and dissolution of the two companies. The district court held a bench trial in August 2020.

At the trial, Leggett and Hontz both admitted that they could not have started You Pick It without the other. They agreed the 10 acres was worth $150,000 and the 4-acre parcel was worth $75,000 and had an outstanding mortgage balance of about $63,000. They differed regarding You Pick It's value and the amount of Leggett's contributions. Leggett testified that she contributed over $333,000 to You Pick It, including $215,000 to improve the land and $115,000 in other expenses such as cars for inventory. She claimed the company and land was currently worth only $314,000. Hontz believed Leggett contributed far less and that the business was worth $500,000.

The district court ultimately dissolved You Pick It and L & H. Finding that Leggett's capital contributions exceeded the value of the companies, the court awarded her all assets and liabilities owned by You Pick It and L & H. The court also ordered her to pay Hontz $83,500, which it determined was the value of his contributions to the companies. Hontz appeals.

ANALYSIS

On appeal, Hontz argues the district court erred by not dividing the business assets equally and by undervaluing his contributions. Leggett contends the record does not

3

support the court's award. She also appears to assert partnership law should govern the distribution of the business assets.

The district court did not err. Although Hontz and Leggett possessed equal ownership interests in the businesses, those equal interests do not necessarily require an equal distribution of the companies' assets. Despite the lack of testimony on the value of Hontz' connections and knowledge, the evidence supports the court's award, and the award was reasonable. Leggett's assertion regarding the application of partnership law has not been preserved and is also incorrect.

1. *Leggett has not preserved her argument that partnership law applies.*

Generally, a party must raise an argument before the district court before raising it on appeal. *State v. Dunn*, 304 Kan. 773, 817, 375 P.3d 332 (2016). However, several exceptions to this general requirement exist. See *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010). To invoke these exceptions, a party must explain why an issue that has not been raised previously is properly before this court. See Kansas Supreme Court Rule 6.02(a)(5) (2022 Kan. S. Ct. R. at 35).

Leggett did not argue partnership law applies to the distribution of the companies' assets before the district court. Instead, she asserted limited liability company law applies. Leggett now suggests partnership law should govern the distribution of the companies' assets. However, she does not indicate that she raised this issue below. See Kansas Supreme Court Rule 6.03(a)(3) (2022 Kan. S. Ct. R. at 35) (facts must be supported by references to the record). Nor does she explain why this issue should be considered for the first time on appeal. Leggett has not preserved this argument.

Even if she had preserved the argument, this case involves a limited liability company and not a partnership. The companies' operating agreements apply in those

4

instances when the operating agreements are silent on an issue, and the laws concerning limited liability companies apply.

2. *The operating agreements did not require the district court to distribute the assets equally.*

Hontz argues the statutes governing limited liability companies required the district court to equally divide the assets because he and Leggett had equal ownership interests in the companies. Under both companies' operating agreements, ownership interests control the division of profits and losses. The proportion of each member's capital account dictates the division of assets upon dissolution. The district court was not required to equally divide the assets based on Leggett's and Hontz' ownership interests.

Limited liability companies are formed by filing articles of organization. K.S.A. 2020 Supp. 17-7673(a). While these articles create a company, a separate document—the operating agreement—describes the company's affairs and business conduct. K.S.A. 2020 Supp. 17-7663(k); K.S.A. 2020 Supp. 17-7673(c) (requiring operating agreement). An operating agreement may be written, oral, or implied, and a written agreement is effective even if it has not been signed. K.S.A. 2020 Supp. 17-7663(k). When an operating agreement does not address a certain issue, the provisions of the Kansas Revised Limited Liability Company Act, K.S.A. 17-7662 et seq., serve as default rules. See *Investcorp v. Simpson Investment Co.*, 277 Kan. 445, Syl. ¶ 4, 85 P.3d 1140 (2003).

Hontz' argument involves the interaction of three provisions of the You Pick It and L & H operating agreements—ownership interests, capital accounts, and the division of assets upon dissolution. These provisions are identical in both agreements.

As appellate courts apply contract principles when interpreting operating agreements, review of those agreements is de novo. See *Iron Mound v. Nueterra Healthcare Management*, 298 Kan. 412, 417-18, 313 P.3d 808 (2013).

5

The operating agreements provide for the distribution of profits and losses among members based on each member's ownership interest in the company. A member's interest is equal to the proportion of each member's shares in the company, as reflected by an LLC certificate. Leggett and Hontz owned an equal number of shares in the companies. They had equal ownership interests and were entitled to an equal distribution of profits and losses.

Although Leggett and Hontz did not do so, the agreements also required each member to maintain an independent capital account. Capital accounts keep track of each member's capital contributions to the company. These contributions include any contribution of value, including cash, property, or assets. See K.S.A. 17-7699 (contribution may be made in cash, property, services rendered, or by promissory note). If a company needed additional investments, the members could agree to additional capital contributions. Those contributions would be made in proportion to each member's capital account. An account's value is calculated by adding the member's capital contributions and the company's income and gains and subtracting any distributions, deductions, and losses. However, an advance by a member is not a capital contribution.

Finally, when a company is dissolved, the agreements establish how to divide assets. Assets would first be used to pay nonmember creditors and then any loans or advances made by members. Any remaining assets would be distributed to the members in proportion to their capital accounts after adjusting for net profits and losses. Noncash assets could be sold or distributed in kind.

Hontz argues that because he and Leggett held equal ownership interests in the companies, the district court erred when it failed to distribute the assets equally. Leggett asserts this only applies to the distribution of profits and losses and that it does not apply to distributing assets when a company dissolves.

The operating agreements indicate only the companies' profits and losses, not company assets, are to be distributed equally. The district court's order concerned the division of assets, not profits and losses. So Leggett's and Hontz' equal ownership interests do not govern the division of assets. Their capital accounts do.

Arguably, some of Leggett's contributions may not qualify as capital contributions. The operating agreements note that, for capital accounts purposes, Leggett and Hontz originally contributed equal amounts of capital to the companies. The LLC certificates were to be issued only after the agreements were signed and the capital contributions made. So her contributions before the issuance of the certificates could potentially not qualify as capital contributions.

However, the exhibits indicate the You Pick It certificates were issued before the company's bank account was opened. No testimony or exhibits indicate Leggett intended her contributions to reflect the value of Hontz' knowledge and connections. Instead, the provision simply reflects that when the businesses were formed, Leggett's and Hontz' capital accounts were equal. However there is no evidence to indicate that the capital accounts remained equal. In fact, it showed the opposite. The district court was not required to divide the company's assets equally a upon dissolution.

3. *The district court's award to Hontz is supported by evidence and was reasonable.*

Hontz also argues the district court undervalued his contributions when dividing the companies' assets. Leggett asserts substantial evidence does not support the court's award. However, evidence supports the award, and the award was reasonable.

Under the operating agreements, a capital contribution is anything of value. Leggett contends no substantial evidence supports the court's award. Substantial evidence

supports the award. Hontz did not assign a dollar value to his knowledge and connections. He simply argued he was entitled to half of the businesses' assets. Other evidence supports the district court's valuation, indicating it was reasonable.

Based on the trial testimony, Hontz contributed a tow truck, which he traded for a skid steer, and some cars to You Pick It. He valued the truck between $12,000 to $13,000. Leggett and Hontz also initially used his towing business to purchase cars for You Pick It because Hontz had a dealer's license. They purchased cars based on his connections from operating the towing business. And he also knew how to price and sell car parts.

Hontz' connections allowed You Pick It to acquire an inventory of cars. His dealer's license allowed the company to do so legally. He also provided knowledge on how to make a profit selling the cars. This would have been particularly valuable when You Pick It was first created. The evidence supports valuing Hontz' contributions at $83,500—about a quarter of the $330,000 Leggett contributed. The valuation of Hontz' contributions encompassed his contributions to both You Pick It and L & H. The court found Leggett's contributions exceeded the value of the companies—she testified that You Pick It and the land it sat on was only worth $314,000.

Finally, this award was reasonable. Given the intermingling of personal and business funds, the district court could only estimate each business' value and each member's capital account value. The court did so, and its conclusion was reasonable. Substantial evidence supports the district court's award to Hontz, and the award was reasonable.

Affirmed.